BALDWIN PIANO AND ORGAN
COMPANY, Plaintiff,

v.

INTERNATIONAL CHEMICAL WORK-
ERS UNION and International Chemi-
cal Workers Union, Local Union No. 800,
Defendants.

Civ. A. No. GC 82–121–WK–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

May 20, 1983.

James A. Gilker, Fort Smith, Ark., Jerome C. Hafter, Greenville, Miss., for plaintiff.

Preston Davis Rideout, Jr., Akron, Ohio, Albert Lee Abraham, Jr., Greenwood, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, District Judge.

In this action brought pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), Baldwin Piano and Organ Company (Baldwin), sues defendants, International Chemical Workers Union and International Chemical Workers Union, Local No. 800 (the Union), to vacate arbitration awards and rulings that construe the collective bargaining agreement covering plaintiff's production and maintenance employees at its Greenwood, Mississippi, plant; and the Union counterclaims to enforce the awards. The arbitration proceedings at issue relate to Baldwin's absentee policy and the exercise of employee seniority rights when a layoff occurs.

There appear to be no material factual disputes, and plaintiff and defendants seek summary judgment in the case. To determine whether either side is entitled to summary judgment, however, requires an in-depth factual analysis of the collective bargaining agreement as well as the arbitrators' interpretations of relevant contract provisions. We begin our inquiry by first considering the absentee policy and then evaluating employee seniority rights.

### A. Absentee Cases

Baldwin and the Union entered into the collective bargaining agreement on March 1, 1980, with an expiration date of March 30, 1983. Article III, known as the Management's Rights Clause, reads:

The management hereby retains the sole control over all matters concerning the operation, management and administration of its business ... the right ... to discipline, suspend, separate for cause or retire employees ... and the right to make and enforce rules and perform all other functions inherent in the administration and/or management of the business.

The above rights of the Company are not all inclusive but indicate the type of matters or rights which belong and are inherent to the Company. Any of the rights, powers and authority the Company had prior to entering the collective bargaining sessions which resulted in this Agreement are retained by the Company except as expressly and specifically abridged, delegated, granted or modified by this Agreement.

In so far as a grievance relates solely to the exercise by the Company of one of the exclusive rights of the Company recognized in this paragraph such grievances shall not be arbitrated or otherwise litigated, except insofar as such grievance alleges a violation of the other provisions of this Agreement.

Pursuant to Article III, Baldwin formulated an absentee policy involving an ongoing tally of occurrences of absence and tardiness. Upon accumulation of a certain num-

ber of occurrences, penalties were to be assessed as follows:

| Number of Occurrences | Penalty |
| --- | --- |
| 5 | Verbal warning by supervisor |
| 7 | Verbal warning by personnel |
| 8 | Written warning by supervisor |
| 9 | Written warning by personnel |
| 10 | Discharge |

The policy further provided that if an employee worked thirty consecutive workdays without an occurrence, one occurrence would then be removed from his record. This method of removal of points could extend to a maximum of ten minus points.

Article VIII of the agreement, which outlines the arbitrator's authority, states as follows:

Section 2: The arbitrator shall be empowered, except as his powers are limited below, to make a decision in cases of alleged violation of rights expressly accorded by this Agreement or written local agreements supplementary thereto.

The limitation on the powers of the arbitrator are as follows:

. . . .

(c) He shall have no power to substitute his discretion for the company's discretion in places where the company has retained discretion or is given discretion to act by this Agreement or any written supplementary agreement.

(d) He shall have no power to decide any question which under this Agreement is within the right of management to decide.

Article VII sets forth the grievance procedure for employees. Section 7 of Article VII provides that "Employees may be discharged, suspended or otherwise disciplined, only for just cause."

The interplay or relationship between the absentee policy and other contractual provisions has been construed in arbitration proceedings at least six times. On August 15, 1981, Ralph Roger Williams, arbitrator in case no. 81K–16270, upheld Baldwin's right to adopt the absentee policy as a valid exercise of the employer's rule-making authority under Article III, and sustained the dis-

charge of an employee, Helen Moore, who had accumulated ten and one-half points between September 8, 1980, and March 16, 1981, including three points she received for three days of consecutive absence because of alleged personal illness. Arbitrator Williams upheld Moore's discharge after considering the relationship between the absentee policy and Section 7 of Article VII of the collective bargaining agreement providing that employees may be discharged only for just cause. Finding that Moore's discharge was under circumstances amounting to just cause, the arbitrator affirmed Baldwin's action.

On September 25, 1981, arbitrator George V. Eyraud, in case no. 81K–16271, reaffirmed Baldwin's right to adopt the absentee policy but disallowed the assessment of one point and rescinded a letter of reprimand issued to employee William Winstead for accumulation of five points because of absences necessitated by an unusual frequency of sickness among his family members. In his ruling, the arbitrator stated:

It is a fact that by receipt of the letter Grievant has been 'otherwise disciplined' and he can only suffer that for 'just cause.' It is not believed by this Arbitrator that under the peculiar facts of this case that grievant was disciplined for 'just cause' and it is therefore the ruling of this Arbitration that the warning letter over which Grievant grieves be removed from his file and that the point total of five points be set back to four points as of January 12, 1981.

On December 29, 1981, arbitrator J. Reese Johnston, in case no. 81K–21997, ordered the removal of three points assessed against Dorothy Jean Pitts for missing three workdays in April 1981 for visiting her seriously ill father. Arbitrator Johnston held the decisions in the Helen Moore and the William Winstead cases were binding and final on the basis that just cause must exist for an employee to be discharged, suspended or otherwise disciplined.

Arbitrator Roger Williams, on January 12, 1982, in the case of Will Henry Jones, required a verbal disciplinary warning giv-

en as a result of absences to attend his mother's funeral and attend his wife after surgery be expunged from Jones' record. Arbitrator Williams held that this was not just cause.

Following the rulings of other arbitrators in earlier cases, arbitrator F. Jay Taylor reinstated Nora Irby after discharge under the absentee policy. Taylor found that Irby's discharge was not for just cause since it was brought about by an automobile accident and her child's injury.

Roger Williams was the arbitrator in Dorothy Allen's case in which he ruled on August 10, 1982, that assessment of points against her for absences was proper. Since no disciplinary action had been taken against Allen, the grievance was denied. In so ruling, arbitrator Williams expounded further upon the "just cause" requirement in the collective bargaining agreement.

> Unless the parties have negotiated that a violation of a certain rule is just cause for the imposition of specified discipline, an employee's violation of a rule, by committing misconduct prohibited by the rule or by failing to meet a standard of performance prescribed by the rule, does not always constitute just cause for the discipline which management decides to impose. The Company's authority to make and enforce rules does not give management the unfettered right to unilaterally decide that every violation of a rule constitutes just cause for discipline of a certain type or degree. If the Union challenges the type or degree of discipline imposed, while admitting that the violation of the rule occurred, the issue is whether or not the discipline imposed was reasonable discipline to impose for the rule violation committed by the employee, or whether the commission of a protected act or acts or the failure to act in a prescribed manner was a sufficiently serious departure from expected and acceptable behavior to be just cause for the type and degree of discipline imposed by the Company.

. . . .

> Just cause to discipline or discharge an employee for absenteeism arises directly from the occasions when he is absent from work. The accumulation of points under the Absentee Policy is only demonstrative of the extent to which the employee has been absent, and accumulation of points in and of itself does not constitute just cause for discipline or discharge. In most cases, the absences themselves, including the reasons or causes for the absences, must be examined to determine whether or not the employee's deviation from acceptable standards of attendance has been sufficiently serious to be just cause for discipline or discharge.

On December 22, 1981, Inez Moore was disciplined by Baldwin for absenteeism which charged her with a total of eight points for which she was disciplined with a warning letter placed in her personnel file. Although Moore has filed a grievance, it is a pending arbitration and no date for the hearing has yet been set. As in the other arbitration proceedings, Baldwin contends it has the right to discipline employees for absenteeism without regard to the "just cause" provision of Article VII, Section 7.

### B. Seniority Cases

Discrete disputes between the parties concerning employees' seniority during layoffs have required the construction and analysis of Article XXI of the collective bargaining agreement. That article provides in pertinent part:

> Section 4: In all cases of layoff ... due to reduction of forces ... seniority will be considered as set forth below, subject, in every case, to the principle that the employee to be retained or promoted to any job must fulfill the following two factors and only where, in the opinion of management, these two factors are relatively equal shall seniority be controlling:
> Factor 1: Ability to perform the required work at the required quality and production standards.
> Factor 2: Is physically able to perform the required work. In any arbitration proceeding involving the exercise of man-

agement's opinion as to these factors, the arbitrator . . . shall only have the right to determine whether such standards and policies have been fairly administered and applied.

. . . .

Section 7: Subject to the requirements set forth in Section 4 above, any employee who is laid off for a period which, in management's opinion, will continue for fifteen (15) days or more, or which in fact continues for fifteen (15) days, shall be given preference based on seniority over new hires for available jobs in any department. . . . Any employee on layoff from one department who is offered employment in another department pursuant to this provision shall, if he rejects such employment, forfeit any further right during such layoff to preference under this provision in departments other than his own.

. . . .

(b) For purposes of layoff only, and not to be applied to any other seniority provisions in this agreement, the company and the union have agreed to the establishment of layoff units as follows:

Departments 401, 402, 403, and 404.

. . . .

Piano Assembly

In the event of a reduction in force only, which will cause layoffs from the various plant departments, the parties have agreed that within the above layoff units the reduction in force will be accomplished by:

(1) Reduce the roster by the number of probationary employees as provided in Section (5) of this Article XXI, and
(2) if that is insufficient to cover the employees to be laid off, to then lay off the junior employees within the affected departments;

the remaining employees who are affected by such layoff may then exercise their seniority within their layoff unit in order to retain employment. . . .

. . . .

In all cases, the provisions of Section (4) of this Article XXI will apply.

Pursuant to Article XXI, Baldwin, on August 27, 1981, laid off employee Ruth Clark. Clark, who had a seniority date of August 27, 1965, filed a grievance because a junior employee, Arlene Cayson, with a seniority date of November 8, 1965, was retained. Both were employed in the piano assembly unit. While retaining Cayson, Baldwin offered Clark the job of dumper in a different department which she refused. Baldwin argued in the arbitration proceeding that because of her refusal of the dumper job, Clark had no further seniority rights in any department except the piano department from which she was laid off. Arbitrator D.L. Howell, who heard the grievance on April 19, 1982, ruled that under Article XXI in a layoff situation seniority would not be the controlling factor unless the senior employee was "relatively equal" to a junior employee whom Baldwin desired to retain over the senior employee. He further concluded that it was within the employer's sole discretion to determine the relative equality of employees. Nevertheless, arbitrator Howell found that the arbitrator has a right to review Baldwin's exercise of discretion to determine whether it had acted in good faith. He went on to find that Baldwin had properly exercised its discretion in deciding to lay off Clark rather than Cayson from the piano assembly department. Despite this ruling, Howell nevertheless explained that Article XXI, Section 7(b), afforded a laid-off employee the right to exercise seniority to displace a junior employee within the layoff unit whose job he could perform. Therefore, it was determined that Clark should have been allowed to exercise her seniority over a junior employee within her department. Article XXI, Section 7, Howell found, did not come into play until the employee had already been laid off and was being offered the opportunity to return to work. Consequently, the

arbitrator ordered Baldwin to do two things. First, he ordered it to determine whether Clark was relatively equal to any employee junior to her in work seniority within the piano assembly layoff unit. Second, he ordered that if Clark was found to be relatively equal to any such junior employee working in the piano assembly layoff unit, she should be immediately assigned to such job by virtue of her seniority.

The seniority issue arose again in January 1982 when Arlene Cayson, James Harris, and Lorene Lipsey were laid off from their employment at the Greenwood plant. Baldwin offered Cayson and Lipsey the jobs of the most junior employees in their layoff unit which it considered them able to perform. Each refused the job offered. Since Baldwin considered Harris unable to perform any of the jobs of a junior employee in his layoff unit, he was not offered a job. The employees filed a group grievance which was heard by arbitrator Jerome Ross. As in Ruth Clark's case, Baldwin contended that the collective bargaining agreement did not allow employees to bump junior employees in a layoff situation but merely obligated it, as the employer, to offer the displaced senior employee a single job in their layoff unit for which such employee was qualified under Article XXI, Section 4. Baldwin argued that if the displaced employee turned down the offer of this one job, then such person forfeited further right to exercise his seniority. In his August 26, 1982, opinion, arbitrator Ross followed the ruling in the Ruth Clark case, stating:

The provisions of Section 7(b) do not support this contention. While the language does not provide for the bumping of any employee junior to the affected, senior employee, it certainly does not limit an employee's choice to a take-it-or-leave-it situation for one job. The more reasonable application of the language requires that the affected, senior employee move to a job of a junior employee which he or she can perform with no one-chance constraint on his or her selection.

. . . .

. . . .

Section 7 does not establish a take-it-or-leave-it situation for an employee affected by a reduction in force. . . . [T]he offer of one job to the grievants did not satisfy the Company's obligation under Section 7(b) to allow the grievants to exercise their seniority after they disclosed that they were physically unable to do the heavy work. The intent of the Section 7(b) exercise of seniority requires the Company to offer the affected employees a job of the next junior employee which they are qualified to perform.

Accordingly, arbitrator Ross ordered Baldwin to comply with his interpretation of the provisions of Section 7(b) and to offer each grievant a job then held by a junior employee in his or her layoff unit which each grievant was then qualified to do. Two other grievances that concern seniority issues remain pending as to employees Adell Martin and Willie Totten in one grievance and Robert Givins in another. Both grievances concern the precise issues considered and ruled upon by the arbitrators in the Ruth Clark case and the group grievance.

### C. Scope of Judicial Review

Before considering the parties' positions in this district court, we must observe the perimeters to our review of the arbitrators' rulings and effect to be attributed to them. It is familiar law, from the "Steelworkers Trilogy" cases, that courts may not address issues that go to the intrinsic merits of a labor dispute and may only consider (1) whether the subject matter of the controversy is arguably arbitrable and (2) whether the award draws its essence from the collective bargaining agreement. See United Steelworkers v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). If it is determined that the subject

matter of the arbitration was arguably arbitrable and that the award drew its essence from the collective bargaining agreement, courts will not disturb the arbitrator's award. *International Association of Machinists v. Texas Steel Company,* 538 F.2d 1116 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977) (Texas Steel I). The scope of judicial review is narrow because "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel and Car Company, supra* 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429; *Waverly Mineral Products Company v. United Steelworkers of America,* 633 F.2d 682, 684 (5th Cir.1980). Accordingly, if a dispute is arguably arbitrable, it is the arbitrator, and not the court, that determines whether the dispute may be arbitrated. *Alabama Power Company v. Local Union No. 391,* 612 F.2d 960, 963 (5th Cir.1980). Moreover, the arbitrator determines whether he has jurisdiction to entertain a grievance as well as resolve it on the merits. *International Association of Machinists v. Texas Steel Company,* 639 F.2d 279, 281 (5th Cir.1981) (Texas Steel II). Though this court may review an arbitrator's decision concerning arbitrability, there is no dispute between the parties that the arbitrators in the instant action had the power to construe the pertinent contractual language. Our inquiry is therefore limited to determining whether the arbitrators' awards drew their essence from the collective bargaining agreement by confining themselves to an interpretation and application of the agreement or went beyond the contract by a substitution of their own judgment in the place of the agreement as set forth in the several provisions of the collective bargaining agreement. *See Texas Steel* I, *supra* at 1120–21.

In considering whether the arbitration awards in the instant case drew their essence from the collective bargaining agreement, we must refrain from attempting to interpret the substantive provisions of the contract unless it is shown that the arbitrator's decisions were "without foundation in reason or fact." Only in that eventuality may we disturb their rulings. *Boise Cascade Corporation v. United Steelworkers of America,* 588 F.2d 127, 129 (5th Cir.), *cert. denied,* 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979); *Machinists District No. 145 v. Modern Air Transport, Inc.,* 495 F.2d 1241, 1244 (5th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974).

Put most simply, the arbitrator is the parties' officially designated 'reader' of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. Thus, a 'misinterpretation' or 'gross mistake' by the arbitrator becomes a contradiction in terms. In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract.

St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny,* 75 Mich.L. Review, 1137, 1140 (1977); *Safeway Stores v. Bakery Workers Local 111,* 390 F.2d 79, 83–84 (5th Cir.1968). Baldwin argues that in both the absenteeism cases and the seniority cases, the arbitrator usurped management's rights to "make and enforce rules and perform all other functions inherent in the administration and/or management of the business," as provided in Article III. Furthermore, Baldwin contends that the arbitrators violated Article VIII by substituting their judgment for that of the company, and, by making their rulings, went clearly beyond their power to arbitrate employee grievances. We disagree and find Baldwin's contentions to be without merit. Article VII, Section 7, providing that employees may be discharged, suspended or otherwise disciplined, *only for just cause,* is certainly at least a plausible and rational restraint upon Baldwin's exercise of discretion to make and enforce rules. Similarly, Article XXI, Sections 7 and 7(b),

may well be read, as they were by the arbitrators, to allow senior employees to exercise seniority rights without being forced to do so on a "take-it-or-leave-it basis". Though we refrain from addressing the actual merits of any arbitration rulings, we find that the quoted contractual provisions provide an adequate basis for the rulings which the arbitrators rendered and that the rulings drew their essence from the collective bargaining agreement.

■ Quite apart from our determination that the arbitrators drew the essence of their awards from the collective bargaining agreement, Baldwin's right to contest the awards of three grievances is manifestly barred by Mississippi's applicable statute of limitations, Miss.Code Ann. § 11–15–27 (1972). The decisions in the grievances of William Winstead, Dorothy Jean Pitts, and Will Henry Jones were rendered on September 25, 1981, December 29, 1981, and January 12, 1982, respectively. Baldwin's present suit to vacate these awards was not filed until June 2, 1982. Section 11–15–27 provides:

> An application to vacate or modify an award shall be made to the court at the term next after the making and publication of the award, upon at least five days' notice, in writing, being given to the adverse party, if there be time for that purpose; and if there be not time, such court or the judge thereof, may, upon good cause shown, order a stay of proceedings upon the award, either absolutely or upon such terms as shall appear just, until the next succeeding term of court.

Adhering to the principle announced in *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), where the Supreme Court applied the New York ninety-day limitation for vacating arbitration awards, the Fifth Circuit in *Rigby v. Roadway Express, Inc.*, 680 F.2d 342 (5th Cir.1982), held that 11–15–27 prescribes the period of limitations for contesting arbitration awards in Mississippi. Because of the plant's location and residence of the griev-

ants, the terms of court next following the dates of the respective awards and which are here pertinent, are those of the Leflore County Circuit and Chancery Courts fixed by law as follows:

| | |
|---|---|
| Circuit Court: | November 1981 |
| | March 1982 |
| | June 1982 |
| | November 1982 |
| Chancery Court: | December 1981 |
| | February 1982 |
| | May 1982 |
| | August 1982 |
| | December 1982 |

An examination of the dates for court terms in Leflore County reveals that Baldwin's challenges to three of the awards are time-barred. The statute ran on the Winstead award either at the close of the November 1981 Circuit Court term or at the close of the December 1981 Chancery Court term. The statute ran on the Pitts and Jones awards either at the close of the February 1982 Chancery Court term or at the close of the March 1982 Circuit Court term.*

### D. Judicial Enforcement of Awards Issued

■ Having substantively determined, however, that none of the arbitration awards may be vacated since they drew their essence from the collective bargaining agreement, we address the Union's counterclaims to enforce the awards and to apply the rulings on which those awards are premised to the grievances still pending. Inasmuch as the national labor policy strongly supports the resolution of disputes through arbitration, federal courts are empowered to issue injunctions to prevent the violation of an arbitration award when it is rendered. *New Orleans Steamship Association v. General Longshore Workers*, 626 F.2d 455, 466 (5th Cir.1980), aff'd sub nom., — U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982). In enforcing an arbitration award, we apply the same criteria that govern an action to vacate an arbitration award discussed *supra*. Thus, not only is Baldwin precluded from seeking vacation of

---

* See Judge's post-opinion note on page 1273.

the arbitration awards, it may not use the same arguments to oppose judicial enforcement of the same arbitration awards. *See, e.g., Service Employees International Union v. Office Center Services, Inc.,* 670 F.2d 404 (3d Cir.1982); *Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135 v. Jefferson Trucking Company, Inc.,* 628 F.2d 1023 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). The completed arbitration rulings discussed above must therefore be adhered to by all parties—whether Baldwin, employee or Union—to the particular proceeding. Because courts lack the power to review the merits of an arbitrator's ruling, any dispute as to whether compliance with the arbitrator's ruling has been achieved must be resolved in arbitration proceedings, and preferably by the arbitrator who rendered the particular decision. *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division,* 481 F.2d 821, 825 (5th Cir.1973). Whether an employee has been disciplined for "just cause" or has been allowed to exercise his seniority, or even collateral issues that arise as to the application of the awards are themselves questions for arbitration. *Oil, Chemical & Atomic Workers v. Rohm & Haas,* 677 F.2d 492, 495 (5th Cir.1982). Baldwin, therefore, must comply with the arbitrators' rulings in the cases of William Winstead, Dorothy Jean Pitts, Will Henry Jones, Nora Irby, Ruth Clark, and the group grievance of Arlene Cayson, James Harris and Lorene Lipsey. Any collateral matters stemming from such rulings must be resolved in arbitration, preferably by the arbitrator who rendered the decision.

### E. Prospective Enforcement of Awards

 The propriety of prospectively enforcing these awards requires us to perform a more detailed review of the arbitrators' rulings. Only if the arbitrator's award specifically provides that it will apply prospectively, *Rohm & Haas, supra* at 493, or if the arbitrator's award is "inherently prospective," *Boston Shipping Association, Inc. v. International Longshoremen's Association,* 659 F.2d 1 (1st Cir.1981), can the award be held binding upon the parties as to govern future grievances.

Whether the award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide. If the parties do not agree, that issue itself is a proper subject for arbitration. *Rohm & Haas, supra* at 494, *citing New Orleans Steamship Association v. General Longshore Workers,* 626 F.2d 455, 568 (5th Cir.1980), *aff'd sub nom.,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982). To ascertain if the arbitration awards in the case *sub judice* are intended to apply prospectively, the rulings of the arbitrators must be examined. In the grievance of Dorothy Jean Pitts, arbitrator Johnston, on page 4 of his opinion, quoted specific language from Article VIII, Section 1, "the decision of the arbitrator as so rendered shall be final and binding upon the employees involved and the parties to this agreement." Johnston interpreted this provision to require him to follow, in absentee cases, the prior arbitration rulings of Roger Williams who previously found that the absentee policy devised by Baldwin was valid on condition that an employee be disciplined for just cause. Though arbitrator Johnston did not expressly so state, it is implicit that his interpretation of Article VIII, Section 1, renders it applicable to the seniority provisions of the collective bargaining agreement as well. The seniority arbitration rulings do not expressly provide that they are to apply prospectively, but since those rulings construe the meaning of contractual provisions rather than merely decide factual matters, we find that the awards are "inherently prospective" when read in conjunction with the provision declaring the arbitrator's decision "final and binding." Hence, Baldwin must adhere to the rulings of the arbitrators that (a) employees may be disciplined or discharged only for "just cause" and (b) that employees who are laid off must be allowed to exercise their seniority rights. It may not continuously contest, or put in issue, the arbitrators' prior decisions that have construed these provisions

when arguing every new grievance. Baldwin may only contest whether those provisions *as construed by the arbitrator* have or have not been violated. *See W.R. Grace and Co. v. Local Union 759,* 652 F.2d 1248, 1249, 1252–55 (5th Cir.1981). Under the tests established in *Oil, Chemical & Atomic Workers v. Ethyl Corporation,* 644 F.2d 1044 (5th Cir.1981), the union has clearly demonstrated upon the basis of evidentiary materials submitted for purposes of determining this summary judgment motion that it is not even arguable that the facts in the pending, uncompleted grievances are not governed by the same provisions which have been fully interpreted by arbitrators on different occasions. It is, of course, unresolved at this stage of the matter in federal court whether the provisions of the contract have been violated by Baldwin or a grievant employee. These questions are not to be determined by this court; they must be remanded to the arbitrator for disposition. *See Oil, Chemical & Atomic Workers v. Ethyl Corporation, supra* at 1051.

In summary, all completed arbitration proceedings which are involved in this action must be adhered to by Baldwin as well as the Union. Any questions that may arise or have arisen concerning whether these rulings have been properly adhered to must be brought before the arbitrator who fashioned the ruling, and not to this court. Those grievances which are uncompleted and remain pending must also be heard by an arbitrator in the proper course of proceedings. In those as well as future proceedings, however, Baldwin may not contest or argue for a different construction of the provisions of the collective bargaining agreement relating to absenteeism or seniority which have been construed by arbitrators in prior grievance proceedings; and such pending or future grievances shall be restricted to a determination by the arbitrator whether the provisions which have already been construed were in fact violated and in such degree as to warrant Baldwin's disciplinary action.

### F. *Attorney Fees*

Finally, the Union urges the court to award it costs and attorney fees incurred in securing judicial enforcement of the arbitrators' rulings. Finding that Baldwin's failure to adhere to the arbitration awards and its filing of this lawsuit were without justification, we conclude the Union's request for attorney fees to be well taken.

 An unjustified challenge to an arbitrator's decision merits the awarding of costs and attorney fees even though § 301 makes no express provision for their recovery. *Texas Steel* I, *supra* at 1121; *Aluminum Workers International Union v. Chromalloy American Corporation,* 489 F.Supp. 536, 543 (N.D.Miss.1980). A challenge is unjustified if there is no bona fide question as to whether the subject matter of the dispute was arbitrable or whether the award of the arbitrator drew its essence from the collective bargaining agreement. *Texas Steel* I, *supra* at 1122. Therefore, a challenge attacking the " 'intrinsic merits' of the dispute, i.e., the panel's interpretation of the grievance and its broad discretion in fashioning an appropriate remedy" is unjustified and warrants a fee award. *Texas Steel* II, *supra* at 284. Neither the manner in which the moving party couches its pleadings nor the outcome of the lawsuit is determinative of the issue of justification. Instead, the court must examine the realities of the situation. *Texas Steel* II, *supra* at 283.

 Considering the thrust of Baldwin's quest to vacate the arbitration awards in the case *sub judice,* we find it to be evident that this litigation has arisen not because of a sincere belief that the arbitrators overstepped their authority, but because Baldwin was dissatisfied with the arbitrators' construction of the relevant provisions of the contract. Hence, we find that Baldwin's efforts were without justification, and that the Union is entitled to recover attorney fees and costs from Baldwin. If the parties do not agree to the amount of attorney fees and costs, counsel for the Union must file within fifteen (15) days affidavits enumerating the elements of service, time

and charges incurred in defending against Baldwin's claims and in prosecuting its counterclaims. Counsel for Baldwin shall within fifteen (15) days of receipt of the Union's affidavits file counter-affidavits concerning the reasonableness of such fees should it so desire. The court will then make an appropriate ruling assessing attorney fees and costs against Baldwin.

Let an order issue accordingly.

### JUDGE'S NOTE

On June 8, 1983, the Supreme Court of the United States, by a seven to two vote, held that the six months period, contained in § 510(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), and not state limitations period, governs section 301 suits to vacate arbitration awards. *DelCostello v. Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). If *DelCostello* is to be given retroactive effect, by overruling, *sub silentio, United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), relied upon by us in the case at bar, only the motion to vacate the Winstead grievance would be time-barred. This does not, however, affect the outcome of the case which was reached on other grounds.