**I.U.B.A.C. LOCAL UNION # 31, et al., Plaintiffs,**

**v.**

**ANASTASI BROTHERS CORP., a foreign corporation, et al., Defendants.**

**No. 84–180–CIV–EPS.**

United States District Court, S.D. Florida, Miami Division.

Dec. 11, 1984.

Howard Susskind, Miami, Fla., for plaintiffs.

Michael W. Casey, III, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO STRIKE AND MOTION TO DISMISS

SPELLMAN, District Judge.

This is an action by I.U.B.A.C. Local Union # 31 (Union) and the Trustees of the various I.U.B.A.C. Local # 31 Fringe Benefit Trust Funds (Funds) to confirm and enforce an award rendered by a grievance committee pursuant to the terms of a collective bargaining agreement between the Defendant Anastasi Brothers Corp. (ABC) and the Union. The award of the grievance committee required the Defendant, ABC, to pay to the Plaintiffs certain damages based upon the hours worked by the non-union employees of Anastasi Brothers Corp. of Florida (ABC of Florida), an alleged alter-ego of the Defendant ABC.

In their complaint to enforce the award, the Union and the Funds claim that the award of the grievance committee is final and binding on ABC. The Defendants, ABC and ABC of Florida, deny any liability. Although it is undisputed that they had notice of the hearing on the Union's grievance before the grievance committee, neither ABC nor ABC of Florida attended the hearing. Nor did they file a motion to vacate the committee's award. Instead, they responded to the complaint with numerous affirmative defenses and counterclaims. The gist of these defenses and counterclaims is that the provision of the collective bargaining agreement upon which the award is based is illegal and therefore unenforceable.

The Union and the Funds have filed a Motion to Dismiss and a Motion to Strike the Defendants' affirmative defenses and counterclaims arguing that these claims are barred by the statute of limitations applicable to petitions to vacate arbitration awards. The Union and the Funds claim that if ABC and ABC of Florida were not satisfied with the decision of the grievance committee, they were required to move to vacate the arbitration award within the ninety (90) day period prescribed by the Florida statute governing arbitration. Section 682.13(2) Florida Statutes (1983). The failure of the Defendants to use the proper procedure to vacate the award, should, according to the Union and the Funds, bar the Defendants from later seeking the same relief in the form of an affirmative

defense or a counterclaim in an enforcement action.

The question this Court must determine is whether the Defendants waived their illegality defense when they failed to timely move to vacate the arbitration award. For the following reasons, the Court finds that the Defendants have not waived their claim that the contract clause upon which the arbitration award is based is illegal. Accordingly, the Motions to Dismiss and to Strike are DENIED.

## I.

■ The failure to timely file a motion to vacate an arbitration award generally bars a defendant in an enforcement action from later seeking the same relief in the form of a counterclaim. *See, e.g., Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.,* 628 F.2d 1023 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *Service Employees International Union, Local No. 36, AFL–CIO v. Office Centers Services Inc.,* 670 F.2d 404 (3d Cir.1982). These cases also support the proposition that the applicable statute of limitations is the state law governing arbitration awards as opposed to the Federal Arbitration Act.

Barring a party from seeking to invalidate an award that was not timely challenged comports with the strong federal policy favoring voluntary arbitration as the most expedient method of resolving labor disputes. *See, e.g., United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The short period of time prescribed by the federal and state arbitration statutes for moving courts to vacate an award ensures that an arbitration award becomes final in a timely fashion. As the Seventh Circuit found in *Jefferson Trucking:*

> [T]his policy would seem to condemn the conduct of the defendant who ignored an award disfavorable to it, failed to move to vacate the award and then sought to be given its day in court when the plaintiff brought suit in frustration to have the arbitration award enforced. If the defendant's defenses were of such vital importance to it, the defendant nevertheless had an opportunity to raise them in the manner contemplated by the statute.

628 F.2d at 1027.

■ While there are sound reasons for requiring parties to adhere to the procedures governing arbitration, it is also well-established that a court may not enforce a contract that is illegal or contrary to public policy. *E.g., Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982); *Hurd v. Hodge,* 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948).

In *Kaiser Steel,* a collective bargaining agreement between the United Mine Workers of America and the employer coal producers contained a clause requiring the employer to report his purchases of coal *not* under contract with the union and to make contributions to the union welfare fund on the basis of these purchases. Kaiser failed to make these reports or pay the contributions and the union brought suit in federal court to enforce the collective bargaining agreement. Kaiser admitted its failure to report and contribute, but defended the lawsuit on the grounds that the "purchased coal" clause of the contract violated the Sherman Anti-Trust Act and the National Labor Relations Act. The district court, on the union's motion for summary judgment, disregarded the illegality defense, and did not review the legality of the "purchased coal" clause. The court of appeals affirmed, but the Supreme Court reversed.

The Supreme Court held that federal courts have a duty to determine whether a contract violates federal law and must reach the merits of an illegality defense *before* enforcing a contract. According to the Court:

> It is ... well established ... that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private

agreements is at all times exercised subject to the restrictions and limitations of public policy of the United States as manifested in ... federal statutes.... Where the enforcement of private agreements would be violative of that policy, it is the obligation of the courts to refrain from such exertions of judicial power." *Hurd v. Hodge,* 334 U.S. 24, 34–35 [68 S.Ct. 847, 852–853] (1948) (footnotes omitted) .... [A] court must reach the merits of an illegality defense in order to determine whether the contract clause has any legal effect in the first place. 455 U.S. at 83–84, 102 S.Ct. at 859.

■ Thus, a party cannot waive the defense of illegality of the contract. The Court itself is bound to raise the issue *sua sponte. Nyhus v. Travel Management Corp.,* 466 F.2d 440, 447 (D.C.Cir.1972); *California Pacific Bank v. Small Business Admin.,* 557 F.2d 218, 223 (9th Cir. 1977).

■ This Court therefore will not dismiss or strike the Defendants counterclaims and affirmative defenses because they failed to move to vacate the arbitration award within the statutory time limits. Although this Court does not approve of the Defendants' failure to abide by the appropriate procedures to challenge the decision of the grievance committee, the legality of the contract clause at issue here must be determined before the arbitration award can be enforced.

## II.

At a status conference, this Court indicated that it would treat the Defendants'

claims that the contract clause is illegal as a motion to dismiss for failure to state a claim upon which relief could be granted. Upon further reflection, the Court finds that it is unable to determine the legality of the provision in question based on the pleadings alone.

This Court recognizes that the Defendants' illegality claim may have considerable merit. The clause in the contract that ABC allegedly violated binds the employer to the terms of the collective bargaining agreement even for his related non-union businesses.[1] The former fifth circuit analyzed a very similar provision in *Florida Marble Polishers v. Edwin M. Green, Inc.,* 653 F.2d 972 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982), and found that, under the circumstances of that case, the clause was illegal. The Court's decision rested on two grounds. First, the Court found that the clause usurped the rights of the non-union company's employees to choose their own bargaining representatives pursuant to Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. Second, the Court found that the clause usurped the authority of the National Labor Relations Board to determine the appropriate bargaining unit for those employees pursuant to Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b). 653 F.2d at 976–77. Thus, an arbitration award based on a violation of an identical clause may not be valid and enforceable.

This Court does not, however, read *Florida Marble* to hold that the contract clause at issue here is *per se* invalid. *Florida*

---

**1.** The contract provision at issue here reads as follows:

For the purpose of determining the responsibility and liability of the Employer under the terms of this Agreement, the word "Employer" as used throughout this Agreement is hereby defined to mean the firm described below, whether a sole proprietorship, joint venture or corporation; in addition, the word "Employer" shall at all times be defined to include any and all other business entities doing business in whole or in part in the trade and territorial jurisdiction of the Union, including but not limited to a sole proprietorship, a partnership, a

corporation, a joint venture, an assign, a successor, a subsidiary, a parent corporation, a merger, a lessee or a lessor, which are owned, controlled or operated by one or more of the members, stockholders or officers, of the firm described below; or, in which one or more members, stockholders or officers of such entity owns, controls or operates the firm described below. For the purpose of this definition, a person will be deemed to "control or operate" a business entity if he is its managing or principal officer or member, or if he is in charge of its labor relations in whole or in part.

*Marble,* just like this case, involved what is known as a "double-breasted" operation, *i.e.* a contractor who operates one company that is party to a labor agreement and a second company that is non-union. This situation permits the contractor to compete for both union and non-union work—the union company bids on projects requiring union contracts and the non-union bids on projects not requiring union labor.

Double-breasted operations are not inherently illegal. Nonetheless, unions frequently have resisted this practice by attempting to extend the labor agreement to the non-union employees. When the employer refuses, the unions bring unfair labor practice charges before the National Labor Relations Board (Board). The Board evaluates these claims by employing two interrelated doctrines, the "single employer" and the "alter ego." *See, e.g., NLRB v. Al Bryant, Inc.,* 711 F.2d 543 (3d Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

 Under the single employer doctrine, the Board treats two or more related enterprises as one within the meaning of section 2(2) of the NLRA, 29 U.S.C. § 152(2). To determine whether two entities are a single employer, the Board looks to such factors as (1) the interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965); *NLRB v. Don Burgess Construction Corp.,* 596 F.2d 378, 384 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). If the Board finds that the two companies fit under the single employer doctrine, both companies will be bound by the labor agreement if the Board also finds that the employees constitute a single bargaining unit. *Id.* at 386.

 Although similar factors are employed in determining whether the alter-ego doctrine applies, that doctrine operates differently. "[T]he focus of the alter-ego doctrine, unlike that of the single employer

doctrine, is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 508 (5th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). If the alter-ego doctrine applies, a labor agreement will be enforced against the non-signatory company even without a determination regarding the appropriate bargaining unit. *See J.M. Tanaka Construction, Inc. v. NLRB,* 675 F.2d 1029, 1033–35 (9th Cir.1982).

 The Court in *Florida Marble* utilized these same concepts in holding that the contract clause which bound the employer to the terms of the contract in his non-union business was invalid. The Court went to great pains to point that neither a "single employer" nor an "alter-ego" situation existed between the enterprises involved. *Id.* at 975–77. In other words, the double-breasted operations were entirely legitimate and there was no evidence that the non-union business was created to avoid any obligations the employer previously had with the union or to improperly limit the appropriate bargaining unit. The decision to start the non-union company in *Florida Marble* was "based solely on business factors and was totally devoid of any underlying manifestation of union animus." 653 F.2d at 974. In fact, in that case, the non-union company had been formed several years *before* the contract had been negotiated with the union. Thus, the union was, in essence, trying to use the contract to get around the need for a representational election in the non-union business.

In the present case, the Plaintiffs contend that the contract provision underlying the arbitration award is valid and enforceable because ABC of Florida is an alter-ego of the union company, ABC. Although the grievance committee did not make an express finding on this issue, the findings it did make lend support to this contention. The committee found that there is considerable overlap between the two companies,

that they use the same equipment, supervisory personnel, and that the employees were doing work in the same geographic area. Moreover, the committee found that ABC of Florida was not even licensed with the Broward Building Department—the only license holder was the project manager of the union company. However, from the pleadings alone the Court cannot make the necessary determination that the non-union company is a sham that was created by the union company to avoid its contract obligations under the labor agreement. Because the Plaintiffs should be permitted to develop whatever facts that may exist to support this contention, the Court will not rule on the legality of the contract provision on the basis of the pleadings.