CHAMPION INTERNATIONAL CORPO-RATION, Plaintiff-Appellee,

v.

UNITED PAPERWORKERS INTERNA-TIONAL UNION and its Local No. 371, Defendants-Appellants.

No. 84–5323.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1985.

Decided Dec. 18, 1985.

Mark M. Brooks, argued, United Paperworkers Int'l Union, Nashville, Tenn., for defendants-appellants.

Robert E. Jackson, Labor Counsel, St. Regis Corp., West Nyack, N.Y., Ward DeWitt, Jr., Gary M. Brown, argued, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for plaintiff-appellee.

Before ENGEL and KRUPANSKY, Circuit Judges, and GIBBONS, District Judge.[*]

GIBBONS, District Judge.

This is an appeal from the district court's modification of a labor arbitration award. Plaintiff below, St. Regis Corporation,[1] filed suit in the United States District Court for the Middle District of Tennessee, seeking to vacate an arbitration award under Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185. Presented with cross-motions for summary judgment, the district court, applying the Tennessee statute of limitations, found that plaintiff's suit was timely filed. The district court then modified the arbitration

---

[*] The Honorable Julia Gibbons, Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. The appellee is now Champion International Corporation, which purchased all the stock of St. Regis in a merger and is the surviving corporation.

award, holding that the arbitrator's decision exceeded the scope of the submitted issue. The union appealed and argues before us that the district court was incorrect in its rulings on both issues. We affirm.

This dispute arose in the summer of 1981 out of a change in the work schedule for a two-week maintenance outage at the company's paper mill in Monticello, Mississippi. The company typically schedules maintenance outages on one of its two paper machines at a time. Both machines were scheduled for this particular outage, however, because of poor business conditions and lack of customer orders.

The original schedule provided for a two-week outage from Monday, July 20, to Monday, August 3, with seven 10-hour days in each of the two weeks. Two 10-hour Sundays at double-time wages were included.[2] Maintenance crews made up of company employees were to work simultaneously with and for the same number of hours as crews performing the portion of the work which had been contracted out to independent contractors. The terms of this schedule were adopted in accord with the collective bargaining agreement between the parties.

Subsequent to posting of the original schedule, the company realized that, because of poor business conditions, there was no reason to expedite the maintenance work by including two double-time Sundays in the schedule. Therefore, it eliminated the Sundays from the maintenance schedule and replaced them with the Monday and Tuesday following the original two weeks. The normal rotating fire-brigade crew was scheduled to work for the two Sundays.

The union objected to the revision, saying its acceptance of the original schedule had been predicated on inclusion of the Sundays. It asked the company to re-assign some of the contractor work to employee crews for the Sundays. The company refused. The union then objected to

scheduling the regular fire-brigade crews on the Sundays and argued that special crews selected on the basis of seniority should receive this work. The company also refused this modification.

After the outage the union filed two grievances. Grievance No. 81–371–63 [Scheduling Grievance] stated that "[t]he Company laid off employees on their normal scheduled work day after contracting normal maintenance for six (6) days to outside contractors," and requested as relief "Pay for all people who lost work." Grievance No. 81–371–62 [Seniority Grievance] stated that "[t]he Company did not follow seniority in working employees on Sunday, July 26, 1981, and Sunday, August 2, 1981," and requested as relief "Pay for all people who lost work." The company denied both grievances.

Prior to arbitration, the union withdrew the seniority grievance. The scheduling grievance, however, was submitted to arbitration. At the arbitration hearing, the union attempted to submit the seniority grievance as well, arguing that it was inherently suggested by and included within the scheduling grievance. The company objected to inclusion of the seniority grievance. It refused to argue the merits of the seniority grievance, both at the hearing and in its post-hearing brief. The union in its post-hearing brief argued the merits of the seniority grievance, but the relief requested was only that for the scheduling grievance.

On April 2, 1983, the arbitrator issued an opinion deciding both grievances. He held that the seniority grievance was "inherently suggested by the result of the Sunday-deletion decision," that the issue would have emerged without the existence of the seniority grievance, and that withdrawal of that grievance should not operate to bar an appropriate remedy. The arbitrator awarded pay to those employees who would have

2. The normal work week at the mill runs seven days, from 7 a.m. Monday morning to 7 a.m. the following Monday, with Sunday wages at time and a half. When Sunday hours are over-

time hours, the rate is double-time overtime. Plant maintenance forces normally work in crews with rotating schedules of five 8-hour work days per week for each crew.

worked in the fire brigade on either or both Sundays had seniority been applied.

The first issue presented on appeal is whether the district court erred in finding that the company's suit was timely by applying a Tennessee rather than a Mississippi or a federal limitations period. The union's argument about the timeliness of the action centers on the district court's failure to apply the Tennessee borrowing statute. Tenn.Code Ann. Section 28–1–112 (1980). The statute provides:

> Where the statute of limitations of another state or government has created a bar to an action upon a cause accruing therein, while the party to be charged was a resident in such state or such government, the bar is equally effectual in this state.

The union contends that application of this statute would have mandated use of the Mississippi limitations period for actions to vacate or modify arbitration awards.[3] If the Mississippi period applies, the company's action is barred, under the union's interpretation of the Mississippi statute.

The company responds by arguing that its action was timely. It asserts that the district court was correct in applying the ninety-day Tennessee limitations period for filing actions to vacate or modify arbitration awards.[4] Alternatively, it contends that the three-month period of the Federal Arbitration Act, 9 U.S.C. Section 12, applies.

We first reject the company's argument that a federal limitations period applies. The Supreme Court has not specifically decided what limitations period should apply in a Section 301 action by an employer against a union to vacate or modify an arbitration award. The Court has held, however, that as a general rule courts should borrow the most analogous state statute of limitations when there is no federal limitations period expressly applicable to a federal cause of action. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158–60, 103 S.Ct. 2281, 2287–88, 76 L.Ed.2d 476 (1983); *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966).

The Supreme Court decision in *DelCostello* does not require an exception to this general rule. In *DelCostello* the court was presented with a hybrid Section 301 claim involving allegations by an employee that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. In the absence of a state limitations period applicable to an analogous cause of action, the Court concluded that the six-month statute of limitations of 29 U.S.C. Section 160(b) provided the most analogous limitations period under state or federal law. *Id.,* 462 U.S. at 169, 103 S.Ct. at 2292. Here the laws of both Tennessee and Mississippi provide a statute of limitations gov-

---

**3.** Miss.Code Ann. Section 11–15–27 (1972) provides:

> An application to vacate or modify an award shall be made to the court at the term next after the making and publication of the award, upon at least five days' notice, in writing, being given to the adverse party, if there be time for that purpose; and if there be not time, such court, or the Judge thereof, may upon good cause shown, order a stay of proceedings upon the award, either absolutely or upon such terms as shall appear just, until the next succeeding term of court.

**4.** Tenn.Code Ann. Section 29–5–213(b) (1980) (superceded by T.C.A. Section 29–5–313 (Supp. 1985) provides in relevant part:

> An application [to vacate an arbitration award] under this section shall be made within

ninety (90) days after delivery of a copy of the award to the applicant ...

Tenn.Code Ann. Section 29–5–214 (1980) (superceded by T.C.A. Section 29–5–314 (Supp. 1985)) defines the procedure for modifying an award and provides in part:

> (a) Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:
>
>     \*    \*    \*    \*    \*    \*
>
> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted[.]
>
>     \*    \*    \*    \*    \*    \*
>
> (c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

erning state actions to vacate arbitration decisions. The state and federal actions to vacate arbitration awards are analogous. Therefore, an appropriate limitations period can be selected from state law.

Furthermore, other factors which compelled application of a federal limitations period in *DelCostello* are not present here. The court in *DelCostello* noted that state limitations periods for challenging arbitration awards were generally too short for an employee contemplating a hybrid Section 301 claim to analyze the quality of union representation and prepare a suit against both the union and employer. *Id.* at 165–66, 103 S.Ct. at 2291. Such considerations are not relevant here since the employee is not a party and this is not a hybrid Section 301 action. Unlike individual employees, the parties here are sophisticated in collective bargaining agreement litigation. *Id.*

■ We find that the general rule applies and that the district court properly selected a state limitations period governing vacation of arbitration awards for application in this suit under Section 301 to modify or vacate an arbitrator's award. *See United Brotherhood of Carpenters and Joiners of America, Local 1020 v. FMC Corp.,* 724 F.2d 815 (9th Cir.1984); *Derwin v. General Dynamics Corp.,* 719 F.2d 484 (1st Cir.1983); *International Union of Electrical, Radio and Machine Workers, Local 1013 v. Ingram Mfg. Co.,* 715 F.2d 886 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984); *Service Employees International Union, Local No. 36 v. Office Center Services, Inc.,* 670 F.2d 404 (3d Cir. 1982); *Sine v. Local No. 992, International Brotherhood of Teamsters,* 644 F.2d 997 (4th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981); *I.U.B.A.C.*

*Local 31 v. Anastasi Bros. Corp.,* 600 F.Supp. 92 (S.D.Fla.1984).

■ The union further argues, however, that *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1946), requires us to apply Tennessee's borrowing statute rather than Tennessee's statute of limitations for vacation of arbitration awards. The union contends, in essence, that state choice of law rules invariably govern selection of a limitations period for federal claims. We disagree.[5]

In *Cope* the Court adopted the forum state's borrowing statute to determine the limitations period under the National Bank Act, 12 U.S.C. Sections 63–64. As a result, the Court applied the limitations period of the state in which the claim arose rather than the limitations period of the forum state. The Court did not discuss its reasoning in adopting the borrowing statute. Nothing in the opinion indicates that the Court meant to require the adoption of state borrowing statutes for all claims brought under federal statutes lacking an express limitations period.

Indeed, the Court itself has not interpreted *Cope* so broadly. In *Auto Workers v. Hoosier Cardinal Corp.,* the Court expressly reserved the issue of whether federal courts should apply state choice of law rules when determining the appropriate limitations period for claims brought under Section 301. 383 U.S. at 705 n. 8, 86 S.Ct. at 1113 n. 8. *See also* 383 U.S. at 712, 86 S.Ct. at 1116 (dissenting opinion). Such a reservation was particularly appropriate in a Section 301 setting in light of *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957) (holding that Section 301 authorizes federal courts to fashion and apply federal law in enforcing Section 301 rights),

---

5. We recognize that a number of courts apparently have accepted this argument in other contexts. *See Robertson v. Seidman & Seidman,* 609 F.2d 583 (2d Cir.1979); *Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977); *Sack v. Low,* 478 F.2d 360 (2d Cir.1973); *Lang v. Paine, Webber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421 (S.D.N.Y.1984); *Hill v. Equitable Trust Co.,* 562 F.Supp. 1324 (D.Del.1983); *Dekro v. Stern Bros. & Co.,* 540 F.Supp. 406 (W.D.Mo.1982); *Bigbie v. Local 142, International Brotherhood of Teamsters,* 530 F.Supp. 402 (E.D.Ill.1982) (Section 301 suit). Those courts, however, have done so with little or no discussion about whether *Cope* should extend much beyond its particular facts. Since we do not believe *Cope* requires application of the Tennessee borrowing statute in this case, we decline to follow their lead.

which post-dates *Cope* by nearly a decade. Moreover, since *Cope, Auto Workers v. Hoosier Cardinal Corp.* and subsequent cases have clearly directed federal courts to focus upon the forum state's statute of limitations applicable to the most "closely analogous" state substantive claim. *See, e.g., Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. at 704–05, 86 S.Ct. at 1112–13; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) (limitation period for 42 U.S.C. Section 1981); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 61 n. 3, 101 S.Ct. 1559, 1563 n. 3, 67 L.Ed.2d 732 (1981); *DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287. Therefore, *Cope* does not direct a federal court in a Section 301 suit to adopt the forum state's borrowing statute in order to discern the proper statute of limitations. *See Consolidated Express, Inc. v. New York Shipping Ass'n,* 602 F.2d 494, 507 (3d Cir.1979), *vacated on other grounds* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980), *on remand,* 641 F.2d 90 (3d Cir.1981).

In federal claim cases federal courts resort to state statutes of limitations primarily as a matter of expedience, not as a matter of mandatory law. *DelCostello,* 462 U.S. at 159–60 n. 13, 103 S.Ct. at 2287–88 n. 13. Federal courts do not "mechanically appl[y] a state statute of limitations simply because a limitations period is absent from the federal statute." *Id.* at 161, 103 S.Ct. at 2288, quoting *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). Instead, federal courts determine whether such application is, in fact, appropriate in a given case by conducting "an examination of the nature of the federal claim and the federal policies involved." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1562–63, 67 L.Ed.2d 732 (1981). The courts seek "assur[ance] that the importation of state law will not frustrate or interfere with the implementation of national policies." *DelCostello,* 462 U.S. at 161, 103 S.Ct. at 2289, quoting *Occidental Life,* 432 U.S. at 367, 97 S.Ct. at 2454. In other words, federal courts do not apply a state statute of limitations that hinders or conflicts with the federal statutory policies reflected in the substantive right at issue:

> In some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

*DelCostello,* 462 U.S. at 161, 103 S.Ct. at 2289. *See also Johnson v. Railway Express Agency,* 421 U.S. at 465, 95 S.Ct. at 1722 ("[C]onsiderations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration."). Therefore, federal law governs whether a state statute of limitations should apply. *DelCostello, supra; United Parcel Service v. Mitchell,* 451 U.S. at 60, 101 S.Ct. at 1562; *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. at 704–07, 86 S.Ct. at 1112–14.

Federal law, rather than a state borrowing statute, should likewise govern the choice between the forum state's statute of limitations and that of another state in a Section 301 case. A borrowing statute obviously is not tailored to further federal labor policy. "The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of [a] ... right created not by a State legislature but by Congress." *DelCostello,* 462 U.S. at 160 n. 13, 103 S.Ct. at 2288 n. 13, quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 394–95, 66 S.Ct. 582, 583–84, 90 L.Ed. 743 (1946). For this reason the application of a state borrowing statute in a Section 301 case will comport with federal labor policy only coincidentally, if at all. In fact, a borrowing statute's "complex calculus of contacts and interests may produce considerable difficulty in application and uncertainty of outcome without any corresponding improvement of re-

sult." *Consolidated Express, Inc. v. New York Shipping Ass'n*, 602 F.2d at 507.

Here, Tennessee's borrowing statute ties the application of another state's statute of limitations to a party's residence ·in that state and to the claim's arising there. Neither factor pertains in any way to the promotion of policies embodied in Section 301. Moreover, the parties vigorously disagree about whether those two requirements have been met in this case; and Tennessee law provides virtually no guidance. This confusion clearly impedes the implementation of federal labor aims. Use of a federal choice of law rule avoids such confusion. Applying the appropriate federal choice of law rule, we conclude that the forum state's statute of limitations governing the most closely analogous state substantive claim controls, unless a party can demonstrate that the adoption of the forum state's limitation period will substantially undermine federal labor policy or cause the parties undue hardship. *See Consolidated Express, Inc.*, 602 F.2d at 507–08. Here, the district court correctly applied the forum state's statute of limitations for actions to vacate arbitration awards. The state cause of action is perfectly analogous to the federal claim. No evidence suggests that application of the forum state's limitations period will create a danger to federal labor policy or unfairness to the parties.

■ Even if we considered application of a state's borrowing statute appropriate, we would not apply the Mississippi limitations period in this case. The Mississippi statute is particularly ill-suited for federal gap filling. It provides that a motion to vacate an arbitration award "shall be made to the court at the term next after the making and publication of the award ..." Miss. Code Ann. Section 11–15–27. Other statutes establish the dates of terms of court.[6] The statute is ambiguous and, as the dis-

trict court noted, "uncertain to the point of frustration."

As the union points out, at least two district courts in Mississippi have applied the Mississippi limitations period to Section 301 actions to vacate arbitration awards. *See Rigby v. Roadway Express, Inc.*, 680 F.2d 342 (5th Cir.1982); *Baldwin Piano & Organ Company v. International Chemical Workers Union*, 564 F.Supp. 1262 (N.D.Miss.1983). The courts in those cases did not have to apply the technical terms of the statute, however, since under any reasonable construction of the statute the period had expired. *Rigby v. Roadway Express, Inc.*, 680 F.2d at 344; *Baldwin Piano & Organ Company v. International Chemical Workers Union*, 564 F.Supp. at 1270. More important, even if a federal court in Mississippi is required to apply this statute, its application is inappropriate where Mississippi is not the forum state and the forum state has an unambiguous statute of limitations for a perfectly analogous cause of action.

We conclude, therefore, that the district court correctly applied the Tennessee ninety-day limitation period for actions to vacate arbitration awards.

■ The second issue presented on appeal is whether the district court erred in finding that the arbitrator exceeded the scope of the issue submitted and in modifying the award for that reason. *The Steelworkers Trilogy*[7] governs the nature of judicial review of labor arbitration awards. A court must refrain from reviewing the merits of an arbitration award, weighing the equities of the parties, or interpreting the terms of the collective bargaining agreement, 363 U.S. at 569, 596, 80 S.Ct. at 1347, 1360. A court nevertheless may overturn an arbitration award if the court determines that the award pertains to an issue that the parties did not, in fact, sub-

6. Miss.Code Ann. Sections 9–5–41 and 9–7–41(2) (Supp.1983) are apparently the applicable provisions.

7. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v.*

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4.L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

mit for arbitration. 363 U.S. at 582, 597–98, 80 S.Ct. at 1352, 1361; *Courier-Citizen Co. v. Boston Electrotypers Union,* 702 F.2d 273, 281 (1st Cir.1983). *Cf. Detroit Coil Co. v. International Association of Machinists & Aerospace Workers,* 594 F.2d 575 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). However, the extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration:

> Considering the strong presumption in favor of a party's right to arbitration and the extent of an arbitrator's authority, it would be a strange and grudging interpretation of *Steelworkers Trilogy* to demand that arbitrators stay narrowly within the technical limits of the submission. We do not mean to imply that an award that clearly goes beyond the grievance submitted to the arbitrator is enforceable.... But we do hold that the presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission.

*Johnston Boiler Co. v. Local Lodge No. 893,* 753 F.2d 40, 43 (6th Cir.1985). Therefore, it must appear that an arbitrator has clearly exceeded the scope of the submission for a court to overturn or modify an award on that ground.

The arbitration award here does not state the precise issue submitted by the parties. Both parties agree, however, that the seniority grievance was withdrawn from arbitration and that the scheduling grievance was the only grievance submitted. The scheduling grievance was phrased as follows: "The Company laid off employees on their normal scheduled work day after contracting normal maintenance for six (6) days to outside contractors." The submitted grievance obviously and unambiguously refers to the removal of Sunday maintenance work.

Clearly, the arbitrator exceeded the terms of this submission when he decided that the fire brigade crew's composition should have been based on seniority. *Johnston Boiler Co. v. Local Lodge No. 893,* 753 F.2d at 43; *Kroger Co. v. International Brotherhood of Teamsters,* 380 F.2d 728 (6th Cir.1967). The submitted grievance referred to the removal of Sunday maintenance work and cannot be interpreted to include the composition of an unrelated fire brigade crew to keep watch over the plant. Modification of the award is required despite the deference accorded an arbitrator in deciding the scope of issues presented to him.

The judgment of the district court is affirmed.