# Supreme Court of Florida

———————

No. SC11-2468

———————

**VISITING NURSE ASSOCIATION OF FLORIDA, INC.,**
Petitioner,

vs.

**JUPITER MEDICAL CENTER, INC.**
Respondent.

[November 6, 2014]

## REVISED OPINION

LABARGA, C.J.

Visiting Nurse Association of Florida, Inc., seeks review of the decision of the Fourth District Court of Appeal in Jupiter Medical Center, Inc. v. Visiting Nurse Ass'n of Florida, Inc., 72 So. 3d 184 (Fla. 4th DCA 2011), on the ground that it expressly and directly conflicts with a decision of the Fifth District Court of Appeal in Commercial Interiors Corp. of Boca Raton v. Pinkerton & Laws, Inc., 19 So. 3d 1062 (Fla. 5th DCA 2009), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the following reasons, we quash the Fourth

District's decision holding that a court must determine whether a contract is legal prior to enforcing an arbitral award based on the contract.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview

After the conclusion of an arbitration proceeding resolving a contract dispute between Visiting Nurse Association, Inc. (VNA), a home health care agency, and Jupiter Medical Center, Inc. (JMC), a hospital, involving agreed-upon discharge planning procedures and VNA's lease of office space in JMC's hospital, the arbitration panel issued an "interim award," granting VNA damages, prejudgment interest on a portion of the damages, and reserving jurisdiction to consider attorney's fees and costs. In a "Final Award of Arbitrators," the arbitration panel granted VNA attorney's fees, administrative filing fees and expenses, and arbitrators' fees and expenses.

After the "interim award" was issued, JMC filed a motion for reconsideration and a motion to reopen the hearing, alleging that the arbitration panel construed the contract and the discharge planning procedures in violation of federal and state health care laws prohibiting kickbacks for referrals of Medicare patients. The panel summarily denied the motion by e-mail stating that it had already considered those arguments. Jupiter Medical Center subsequently filed a motion to vacate the arbitration award in the Circuit Court of the Fifteenth Judicial

Circuit in and for Palm Beach County, Florida, alleging that the arbitration panel interpreted the contract to be an unlawful agreement and that the panel exceeded its powers.[1] Visiting Nurse Association also filed a motion to enforce the award. At the conclusion of a hearing regarding both motions, the circuit court dismissed the motion to vacate and granted the motion to enforce the award.

On appeal, the Fourth District noted that the trial court did not address the issue of the contract's legality prior to dismissing the action. The Fourth District ultimately reversed the dismissal of the motion to vacate the award and remanded for the trial court to consider the legality of the contract because "a Florida court cannot enforce an illegal contract" and must make that determination prior to enforcing an award based thereon. Visiting Nurse Association then filed a petition to invoke this Court's discretionary jurisdiction, and we granted review. The circumstances leading to the contractual dispute, the arbitration award, and this Court's review of Jupiter Medical Center are more fully set forth below.

### B. Contractual Relationship and Breach

This action arises from the February 2005 purchase of a hospital-based home health care agency (HHA) by VNA from JMC. In 2004, VNA approached JMC to

---

1. During the arguments on the motion to dismiss, counsel for JMC argued that the contract is legal according to its language, but the arbitration award was based on JMC not making future Medicare referrals to VNA, which would have been illegal. Thus, according to JMC's argument below, "it is the method in which the arbitrators construed the agreement" that renders the contract illegal.

purchase JMC's in-house HHA believing that if it streamlined JMC's current operations, VNA could generate $1.5 million of revenue due to the volume of Medicare patients serviced by JMC. Visiting Nurse Association's purchase decision was based on the belief that it would receive forty-five to fifty Medicare referrals per month. Despite a purchase evaluation revealing significant competition from other HHAs, JMC concluded that its in-house HHA's fair market value was $639,000, which VNA ultimately agreed to pay in cash. In exchange for the $639,000, VNA was to obtain all rights and interests in JMC's HHA. The agreement also provided that VNA would have "access to the institution" and "work space" in the hospital. This portion of the agreement was then memorialized in a separate, contemporaneous "office lease" agreement that provided that VNA would occupy space in the discharge planning office until the "dissolution of [VNA]." Further, although VNA did not need the space, it agreed to take over 5,000 square feet of JMC's existing 10-year lease in Jupiter Farms at an expense of $375,000, to purchase "JMC's market share of HHA referrals." Shortly thereafter, VNA noticed a decline in Medicare referrals and attributed it to JMC not divulging information about the agreement's discharge procedures, specifically paragraph five of Exhibit "D" of the agreement, to JMC physicians. In Exhibit "D" of the agreement, the discharge planning procedures were outlined as follows:

1. For any patient requiring home health services post discharge, [JMC] will include in the discharge plan a list of home health agencies that are available to the patient, that are participating in the Medicare program and that serve the geographic area in which the patient resides, consistent with the requirements of 42 CFR 42.43, [JMC] will update its list at least annually and include home health agencies which have requested to be listed by [JMC] and which meet the requirements stated herein.

2. For patients enrolled in managed care organizations, [JMC] indicates the availability of home health agencies to individuals and entities that have a contract with the managed care organization.

3. [JMC] will document in the patient's medical record that the list was presented to the patient or to an individual acting on the patient's behalf.

4. [JMC] will inform the patient or the patient's family of their freedom to choose among participating Medicare home health agencies and will, when possible, respect patient and family preferences, when they are expressed to [JMC]. [JMC] will not specify or otherwise limit the qualified providers that are available to the patient.

5. If, after following the foregoing procedures, the patient expresses no preference, [JMC] will inform the patient of its relationship with the VNA. The purpose of establishing a working relationship with the VNA is to facilitate the smooth transfer of patients into post-hospital care and thereby reduce the average length of stay for hospitalization.

(Some emphasis added).

Around November 2006, VNA suspected that a rotation system was being used where each patient who did not express a preference for a particular HHA was simply assigned to the next HHA on JMC's HHA list. Jupiter Medical Center denied there was a rotation system in place. At the evidentiary hearing, however, a

former JMC discharge planner said a rotation system had indeed been implemented and VNA was only mentioned if the patient had previously been provided services by JMC's HHA prior to its sale to VNA. On June 4, 2007, VNA notified JMC that it would not renew the Jupiter Farms lease after its expiration. Approximately a week later, Chief Medical Officer Dr. Ketterhagen was hired, and he directed the discharge planning department to continue its rotation system to ensure equal distribution of HHA referrals. Pursuant to these directions, if a patient did not express a preference for a particular HHA, JMC referred the patient to the next HHA on JMC's list because Dr. Ketterhagen did not believe JMC was allowed to demonstrate a preference to any particular HHA.

On September 10, 2007, Dr. Ketterhagen informed VNA that due to a shortage of office space, VNA could not continue to maintain office space in the hospital. In this notice, Dr. Ketterhagen also informed VNA that JMC would no longer notify patients of its relationship with VNA. In September 2007, in accordance with its previous notice to JMC, VNA did not make a rent payment for the Jupiter Farms office space. Jupiter Medical Center filed suit in circuit court and VNA instituted arbitration proceedings on November 1, 2007. Neither party argued that the contractual arrangement itself was illegal during the arbitration proceedings.

## C. Arbitration Awards

The arbitration panel issued an "interim award" in which the panel found that JMC breached the contract in two material respects. First, JMC never made its staff aware of the discharge planning procedures outlined in Exhibit "D" of the agreement; the closest JMC ever came to complying with provision 5 of Exhibit "D" was informing former patients of JMC's HHA that VNA had purchased the HHA. Further, the facts demonstrated that JMC continued its use of a rotation system, which deprived VNA of "what it had paid $639,000 for: the ability to subtly 'nudge' JMC's patients to select its agency from among a host of choices."[2] Notably, the panel did not conclude that JMC breached the agreement by failing to refer patients, but only for failing to follow the discharge procedures. The panel also found that even if JMC's equivocation in following the discharge procedures was not a breach of contract, the September 10, 2007, letter from JMC to VNA terminating the in-house lease agreement and announcing its intention to cease explaining its relationship with VNA to patients did constitute a breach.

Second, JMC breached the agreement by terminating VNA's lease agreement that provided VNA with office space inside JMC and access to the

---

2. The panel clarified that the use of the term "nudge" was in reference to the nudge theory that is well known in behavioral economics and defined as the "harmless engineering that attracts a person's attention and alters behavior." The example provided is when vegetables are placed in a more prominent place on a table than junk food.

discharge planning staff. The panel concluded that the office space gave VNA visibility and access to doctors and other referrers in the hospital; without the space, VNA was on equal footing with other HHAs, which was not the benefit VNA purchased.

Regarding damages, the panel noted that calculation of damages was difficult because the evidence presented showed a drop in Medicare referrals, increased competition from other HHAs, and that VNA's business plan failed to account for loss of referrals due to patient choice or doctor referral to a competitor. Further, the evidence showed that VNA lost a substantial amount of business because of referrals by two surgeons to a competing HHA and the termination of a popular admissions coordinator, which upset many doctors. The panel also recognized that VNA failed to account for the work it would take to establish the relationships that JMC's HHA had acquired with hospital staff over the course of twenty years. Moreover, VNA experienced a similar decline in revenue at another hospital and did not demonstrate that JMC itself would not have experienced the same drop in referrals had it not sold the HHA to VNA. Thus, based on the above, the arbitration panel concluded that VNA's damages should be reduced from VNA's projected revenue of $1.5 million per year to $1.125 million due to the historical 25% drop in Medicare census that would have occurred even if VNA received all of the Medicare referrals. Further, the damages were reduced by the

approximately 60% loss of referrals to competitors for a total of $450,000 for three years, which, when reduced to present value, totals $1,251,213.[3] The panel also awarded VNA prejudgment interest on $900,000 and reserved jurisdiction to consider attorney's fees and costs.[4]

Shortly thereafter the panel issued a "Final Award of Arbitrators" in which it granted VNA $214,047.50 in attorney's fees; $16,550 in administrative filing fees and expenses; and $71,780.07 in arbitrators' fees and expenses to be borne entirely by JMC. Jupiter Medical Center was also required to reimburse VNA $49,890.05 for fees and expenses previously incurred by VNA. The arbitration panel later issued an order clarifying the final award to adopt and incorporate the "interim award."

---

3. Stated another way, the panel determined that VNA did not purchase a guaranteed amount of referrals because it reduced VNA's projected revenue by the "historical" 25% drop in Medicare census and another 60% to account for losses of referrals due to patient choice or doctor's preference of another HHA. Thus, the panel calculated damages based on what it appears to have considered a more reasonable projection of anticipated patient volume.

4. The panel further noted that the "Interim Award is in full settlement of all claims on the merits submitted to this arbitration. This Award shall remain in full force and effect until such time as a final award is rendered." The panel indicated it would issue a final award within thirty days after a hearing on attorney's fees and costs.

**D. Jupiter Medical Center's Challenges to the Arbitration Award**

After the "interim award," JMC filed a motion for reconsideration arguing that the arbitration panel did not have a factual basis to reach its decision and did not base its conclusions on the four corners of the agreement. Jupiter Medical Center then filed a formal application and request to reopen the arbitration hearing contending that the proceeding needed to be reopened to allow for testimony and evidence concerning the illegality and serious regulatory concerns resulting from the panel's proposed construction and interpretation of the contract. Specifically, JMC argued that the arbitration panel issued the award based on an erroneous construction of the parties' purchase agreement as an unlawful agreement to make, influence, and steer future patient referrals to VNA in exchange for remuneration in direct violation of multiple state and federal healthcare laws and regulations, including Florida's Anti-Kickback Statutes (§§ 456.054 and 395.0185, Fla. Stat. (2009)); the federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)); Medicare Hospital Condition of participation; Discharge planning (42 C.F.R. § 482.43); Florida's Patient Brokering Act (§ 817.505, Fla. Stat. (2009)); and the Federal Civil Monetary Penalties Law (42 U.S.C. § 1320a-7a). Jupiter Medical Center cited examples of how the award construed the contract in an illegal manner, to wit: the arbitration panel found that VNA based its decision to purchase on receiving a certain amount of referrals; VNA agreed to take over the remaining

three years of JMC's lease to purchase JMC's market share of referrals; and the damage award was based on a calculation solely involving illegally promised future Medicare patient referrals from JMC. The panel issued an order via e-mail denying JMC's motion to reopen the hearing because the panel "considered the matters stated in the motion in its deliberations."

Jupiter Medical Center then filed a motion to vacate the arbitration award in the United States District Court for the Southern District of Florida asserting that the award should be vacated because the award impermissibly construed the parties' contract in a manner that violated multiple federal laws, regulations, and specific, well-defined public policy; and the panel exceeded its powers by contravening the express contractual limitations imposed by the parties' contract and by issuing an award in violation of federal laws, rules, and regulations. The federal district court issued an order granting VNA's motion to dismiss for lack of subject matter jurisdiction, in which the court noted that JMC's right to relief was not dependent on resolution of federal law, but rather only whether the panel properly interpreted and construed the agreement.

While the motion was pending in federal court and before the panel issued the "Final Award of Arbitrators" and the subsequent clarification order, JMC filed a motion to vacate the arbitration award in the Fifteenth Judicial Circuit Court in and for Palm Beach County. Shortly thereafter JMC filed an amended motion to

vacate the arbitration award in the circuit court alleging that the arbitration panel interpreted the contract to be an unlawful agreement and that the panel exceeded its powers. The circuit court dismissed the motion to vacate and granted the motion to enforce the award without explanation or analysis.[5]

On appeal, the Fourth District began its analysis by noting that illegality of a contract is a compelling reason not to enforce a contract, citing several cases from Florida courts indicating a refusal to enforce illegal contracts. The district court then acknowledged that section 682.13(1), Florida Statutes (2009), clearly does not include illegality of a contract as a basis to vacate an arbitral award. Nevertheless, the Fourth District held that "[w]hen the issue of a contract's legality is raised, the trial court must make that determination prior to deciding whether to enforce an arbitral award based thereon." Jupiter Med. Ctr., 72 So. 3d at 187. The Fourth District reasoned that the arbitral award was based on a breach of contract and that a prior arbitration would not prevent the court from vacating an award based on an illegal contract. Visiting Nurse Association then filed a petition to invoke this Court's discretionary jurisdiction arguing that the Fourth District's decision in

---

5. Although the circuit court did not explain its reasoning in the order dismissing the motion to vacate, the court appeared concerned with res judicata principles (the motion to vacate was previously dismissed from federal court) and noted that the argument regarding the illegality of the award appeared disingenuous because it was only raised after the contract was construed by the arbitration panel.

<u>Jupiter Medical Center</u> expressly and directly conflicts with the Fifth District's

decision in <u>Commercial Interiors</u>.

### E.  CONFLICT

In <u>Commercial Interiors</u>, an arbitrator presided over a dispute involving two

subcontracts between Commercial Interiors Corporation of Boca Raton

(Commercial Interiors) and Pinkerton & Laws, Inc. (Pinkerton).  <u>Commercial</u>

<u>Interiors</u>, 19 So. 3d at 1063.  As part of the subcontracts, which contained an

arbitration provision, Commercial Interiors agreed to provide interior painting and

other extra work on a hotel being constructed by Pinkerton.  <u>Id.</u>  Commercial

Interiors eventually brought suit claiming that Pinkerton had failed to pay it

$51,209 for work done according to the subcontracts.  Pinkerton filed a motion to

compel arbitration and the case moved to arbitration.  <u>Id.</u>

Once the arbitration proceedings were initiated, Pinkerton filed a motion to

dismiss the claim alleging that Commercial Interiors was not entitled to payment

because the subcontracts were illegal—Commercial Interiors did not have a

contractor's license.  The arbitrator ruled that although Commercial Interiors may

have violated a local ordinance, it had not violated section 489.128, Florida

Statutes (2002), which is titled "Contracts performed by unlicensed contractors

unenforceable."  Further, the arbitrator ruled that Pinkerton had waived its right to

assert the subcontracts were illegal.  <u>Id.</u>  Pinkerton then filed a motion to set aside

- 13 -

or vacate the order in the trial court.  The trial court entered an order setting aside the arbitrator's order and dismissed the case with prejudice.  Id.  The trial court held that, although it accepted the arbitrator's findings of fact, the subcontracts were not enforceable, and the arbitrator had misapplied section 489.128.  Id.

On appeal, the Fifth District stated that the issue presented was limited to the standard a trial court should use in reviewing an arbitrator's ruling on illegality.  Id. at 1064.  The Fifth District then noted that if a party failed to establish one of the five grounds for vacating an award provided in section 682.13(1), Florida Statutes (2007), "neither a circuit court nor a district court of appeal has the authority to overturn the award."  Id. (quoting Schnurmacher Holding, Inc. v. Noriega, 542 So. 2d 1327, 1328 (Fla. 1989)).  Applying that rationale to the facts, the Fifth District held that none of the narrow grounds to vacate an award were present in the case and that the trial court's order amounted to a simple disagreement with the arbitrator's application of the law to the facts, which was an insufficient basis to set aside the arbitration proceeding.  Thus, the conflict issue presented is whether the legality of a contract is subject to review on a motion to vacate.

Visiting Nurse Association argues before this Court that the Fourth District erred in holding that the trial court must determine whether a contract is legal prior to enforcement of an arbitration award because section 682.13(1) sets forth the

- 14 -

only grounds on which a court shall vacate an arbitration award. Jupiter Medical Center argues that contract illegality is an exception to the statute,[6] and the arbitrators exceeded their powers pursuant to section 682.13(c). For the reasons discussed below, we resolve the conflict by approving <u>Commercial Interiors</u> and disapproving <u>Jupiter Medical Center</u> because courts cannot review an arbitration award based on a claim of contract illegality. Further, we hold that the arbitrators did not exceed their powers.[7]

## II.  ANALYSIS

### A.  Standard of Review

Visiting Nurse Association contends that it is the arbitrator's role to decide the legality of the contract; JMC, however, contends that a court must decide whether a contract is legal prior to enforcement of an arbitral award. Further, JMC contends that the arbitrators exceeded their powers within the meaning of section 682.13(c). Thus, the issues presented are pure questions of law, subject to de novo

---

6. We note that JMC does not argue that the contract itself is illegal, but only that the arbitration panel's erroneous construction of the contract rendered it unlawful. In short, JMC disagrees with the arbitrator's application of the law to the facts. Jupiter Medical Center also appears to invite this Court to address the legality of the agreement. However, we do not address the merits of this argument.

7. Visiting Nurse Association also argued, as a secondary issue, that JMC's motion to vacate was untimely filed and therefore a legal nullity. We find it unnecessary to address this issue in light of our resolution of VNA's other arguments.

review.  See <u>Shotts v. OP Winter Haven, Inc.</u>, 86 So. 3d 456, 461 (Fla. 2011)

(citing <u>Aills v. Boemi</u>, 29 So. 3d 1105, 1108 (Fla. 2010)).  We now turn to the

merits.

## B.  Federal Arbitration Act

Neither party noted whether the Federal Arbitration Act (FAA) or the

Florida Arbitration Code (FAC) applied to this case.  Although the FAA controls

when a transaction involves interstate commerce, "[i]n Florida, an arbitration

clause in a contract involving interstate commerce is subject to the [FAC], to the

extent the FAC is not in conflict with the FAA."[8]  See <u>Shotts</u>, 86 So. 3d at 463-64.

An arbitration clause in a contract not involving interstate commerce is subject to

the FAC.  <u>O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.</u>, 944 So. 2d 181,

184 (Fla. 2006).

To determine if a transaction involved interstate commerce, courts look to

whether the transaction in fact involved interstate commerce, even if the parties did

not contemplate an interstate commerce connection.  <u>Allied-Bruce Terminix Cos.,</u>

<u>Inc. v. Dobson</u>, 513 U.S. 265, 281 (1995).  Here, both parties to the contract are

Florida companies; the purchase agreement involved a home health care agency

---

8.  The FAA's enactment demonstrates a national policy favoring arbitration, and forecloses state legislative attempts to restrict the enforceability of arbitration provisions in agreements.  <u>Preston v. Ferrer</u>, 552 U.S. 346, 353 (2008); <u>see also</u> <u>Allied Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 272 (1995).

with operations in Florida; the lease agreements were for office space in Florida; the patients were treated in Florida; and there is no evidence that the patients treated were from outside the state. However, referral of Medicare patients was contemplated and occurred as part of the transaction. Thus, this transaction in fact involved interstate commerce and is subject to the FAA. See THI of N.M. at Hobbs Ctr., LLC v. Spradlin, 893 F. Supp. 2d 1172, 1183-84 (D.N.M. 2012) aff'd, 532 Fed. Appx. 813 (10th Cir. 2013) (holding that a disputed transaction involved interstate commerce where Medicare paid for a portion of care and the hospital received payment from the New Mexico Medicaid Program, a substantial portion of which is funded by the federal government); Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, CIV. A. 3:10-1001, 2011 WL 1233320 (S.D.W. Va. 2011) (holding that the disputed transaction involved interstate commerce where the plaintiff alleged, among several other factors, that the health care received was paid for by the federal Medicare program and requests for payments were sent to South Carolina); Owens v. Coosa Valley Health Care, Inc., 890 So. 2d 983, 987-88 (Ala. 2004) (holding that the disputed transaction involved interstate commerce where one of the factors alleged was that 95% of the income received by the nursing home derived from federally funded Medicaid or Medicare); Miller v. Cotter, 863 N.E.2d 537, 544 (Mass. 2007) (noting that health care is an activity that in the aggregate would represent a general practice subject to federal control

- 17 -

and holding that "accepting payment from Medicare, a Federal program (which there was some evidence of here), constitutes an act in interstate commerce") (citing Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 327 (1991)).  Although the FAA provisions control, we also apply the FAC to the facts of this case because, as demonstrated below, the FAC is not in conflict with the FAA.  See Shotts, 86 So. 3d at 463-64; Miller, 863 N.E.2d at 544 (acknowledging that the FAA applies, but applying the Massachusetts Arbitration Act because the FAA only preempts state law on arbitration where the state act seeks to limit the enforceability of arbitration contracts).  We first address federal case law to determine whether a court reviewing an arbitral award on a motion to vacate can consider the claim that a contract containing an arbitration provision is void for illegality pursuant to the FAA.

### 1.  Whether a Court Can Consider the Claim that a Contract Containing an Arbitration Provision is Void for Illegality

The United States Supreme Court has repeatedly observed that "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.' " Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443-44 (2006)).  Section 2 of the FAA "makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.' " Id. at 582 (citing

9 U.S.C. § 2). Under the FAA, questions of arbitrability must be resolved "with a healthy regard for the federal policy favoring arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989). With these principles in mind, in Buckeye, the Supreme Court addressed whether "a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality" with regard to section 2 of the FAA. 546 U.S. at 442.

In Buckeye, the respondents entered into various deferred-payment transactions with the petitioner, in which they received cash in exchange for a personal check in the amount of the cash plus a finance charge. For each separate transaction they signed a "Deferred Deposit and Disclosure Agreement" (Agreement), which included arbitration provisions. Id. The respondents brought a putative class action, alleging that the petitioner charged usurious interest rates and that the agreement violated various Florida lending and consumer-protection laws, rendering it criminal on its face. The petitioner moved to compel arbitration. The trial court denied the motion, holding that a court rather than an arbitrator should resolve a claim that a contract is illegal and void ab initio. The Fourth District Court of Appeal reversed, holding that because the respondents did not challenge the arbitration provision itself, but instead claimed that the entire contract was void, the agreement to arbitrate was enforceable, and the question of

the contract's legality should go to the arbitrator. The respondents appealed, and this Court reversed "reasoning that to enforce an agreement to arbitrate in a contract challenged as unlawful 'could breathe life into a contract that not only violates state law, but also is criminal in nature.' " Id. at 443 (quoting Cardegna v. Buckeye Check Cashing, Inc., 894 So. 2d 860, 870 (Fla. 2005) rev'd, 546 U.S. 440 (2006), and opinion withdrawn, 930 So. 2d 610 (Fla. 2006)). The United States Supreme Court then granted certiorari review.

The Supreme Court began its analysis by noting that Congress enacted the FAA to overcome judicial resistance to arbitration. Id. It then observed that challenges to the validity of arbitration agreements can be divided into two types: challenges to the validity of the agreement to arbitrate within the contract; and challenges to the contract as a whole, either on a ground that directly affects the entire agreement, or on the ground that a provision is illegal, which renders the whole contract invalid. Id.

The claim brought by the respondents was identified as one of the second type of challenges. The Supreme Court noted that it previously addressed the question of "who—court or arbitrator—decides these two types of challenges" in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), where it held that federal courts are not permitted to consider challenges to the contract as a whole. Buckeye, 546 U.S. at 444. Further, in Southland Corp. v.

- 20 -

<u>Keating</u>, 465 U.S. 1, 12 (1984), it held that the FAA created a body of substantive law applicable in state and federal courts.  Thus, <u>Prima Paint</u> and <u>Southland</u> answered the question presented by establishing three propositions: "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  Second, unless the challenge is to the arbitration clause itself, <u>the issue of the contract's validity is considered by the arbitrator in the first instance</u>.  Third, this arbitration law applies in state as well as federal courts."  <u>Buckeye</u>, 546 U.S. at 445-46 (emphasis added).  Applying those principles to the facts of the case, the Supreme Court held that a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.  <u>Id.</u> at 446.

Jupiter Medical Center, however, argues that the Supreme Court's use of the phrase "in the first instance" indicates that it anticipated a subsequent proceeding by a court to decide the claim that a contract containing an arbitration provision is void for illegality.[9]  We disagree.  In <u>Buckeye</u>, the issue presented was whether a court or arbitrator decides if a contract is void for illegality, not which tribunal has

_____

9.  Jupiter Medical Center also argues that <u>Buckeye</u>, which involved a motion to compel arbitration rather than a motion to enforce or vacate an arbitration award, is inapposite to the circumstances presented here.  Although a motion to compel arbitration is procedurally distinguishable, the determination that the issue of a contract's legality is to be decided by an arbitrator, however, necessarily results in circumscribed court review pursuant to 9 U.S.C. § 10 as we discuss in the analysis.

the first opportunity to resolve the claim.[10]  The Supreme Court discussed the

import of a determination of who—arbitrator or court—has the authority to decide

claims arising out of a contract containing an arbitration provision in First Options

of Chicago, Inc. v. Kaplan:

> Although the question is a narrow one, it has a certain practical importance.  That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract).  But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value.  The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances.  See, e.g., 9 U.S.C. § 10 (award procured by corruption, fraud, or undue means; arbitrator exceeded his powers); Wilko v. Swan, 346 U.S. 427, 436-437 (1953) (parties bound by arbitrator's decision not in "manifest disregard" of the law), overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989).

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995) (emphasis

added).  As First Options makes clear, the Supreme Court's determination that an

arbitrator "should consider the claim that a contract containing an arbitration

provision is void for illegality" limits a party's right to the circumscribed court

review provided in 9 U.S.C. § 10.  Buckeye, 546 U.S. at 442.  Thus, we cannot

---

10.  In addition, the phrase "in the first instance" qualifies the immediately preceding portion of the sentence: "the issue of the contract's validity is considered by the arbitrator. . . ."  Thus, in light of the Supreme Court's broadly stated issue and holding, the Supreme Court intended that the arbitrator would consider legality of the contract before proceeding to the merits of the contractual dispute as opposed to creating an additional layer of review for contract illegality claims.

read Buckeye as establishing a subsequent de novo court review for contract illegality claims in this context. Such a reading would be inconsistent with the Supreme Court's efforts to avoid interpretations of the FAA that would " 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process. . . .' " Hall St., 552 U.S. at 588 (citations omitted).

Despite this apparent legislative limitation on the authority of the courts to vacate an arbitral award, JMC argues that a court cannot enforce an arbitration panel's interpretation of a contract if it results in the violation of some well-defined, dominant public policy that is to be ascertained by "reference to the laws and legal precedents and not from general considerations of supposed public interests," citing to authority from various federal courts and the Supreme Court of Connecticut. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 42 (1987) (explaining that "[a] court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law"); W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 766 (1983) ("If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it."); Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 861 F.2d 665 (11th Cir. 1988); Mercy Hosp., Inc. v. Mass.

- 23 -

Nurses Ass'n., 429 F.3d 338, 343 (1st Cir. 2005) (noting that an exception to the general rule that the arbitrator has the "last word" is that courts may refuse to enforce illegal contracts); I.U.B.A.C. Local Union No. 31 v. Anastasi Bros. Corp., 600 F. Supp. 92, 94-95 (S.D. Fla. 1984) ("While there are sound reasons for requiring parties to adhere to the procedures governing arbitration, it is also well-established that a court may not enforce a contract that is illegal or contrary to public policy . . . the legality of the contract clause at issue here must be determined before the arbitration award can be enforced."); State v. AFSCME, Council 4, Local 2663, 777 A.2d 169, 178 (Conn. 2001) (explaining that Connecticut recognizes a public policy exception to section 52-418, Connecticut General Statutes, which mirrors the FAA, because "[w]hen a challenge to the arbitrator's authority is made on public policy grounds . . . the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award."). However, these cases did not involve arbitration under the FAA and are thus inapplicable to the question of whether extra-statutory grounds for invalidating an arbitration award survived the decision in Hall Street in cases, such as this one, that are governed by the FAA.

In Hall Street, petitioner Hall Street Associates, L.L.C., and respondent Mattel, Inc., initiated litigation in the United States District Court for the District of Oregon, but soon reached an impasse on the parties' indemnification portion of the

dispute. The parties offered to submit to arbitration and the District Court was amenable. As a result, the parties drafted an arbitration agreement, approved by the District Court and entered as an order, providing the District Court with the authority to vacate, modify, or correct any award where the arbitrator's findings of fact were not supported by substantial evidence or where the conclusions of law were erroneous. Hall St., 552 U.S. at 579.

Arbitration proceedings took place and the arbitrator ruled that Mattel was not obligated to indemnify Hall Street. Hall Street subsequently filed a motion to vacate, modify, or correct the arbitration decision on the ground that the arbitrator's decision constituted legal error. The District Court vacated the award based on the standard of review provided in the parties' contractual agreement. Id. at 580. After the arbitration decision was revised on remand, each party sought modification in the District Court, which largely upheld the award pursuant to the same standard of review provided in the parties' agreement.

On appeal to the Ninth Circuit Court of Appeals, Mattel argued that the arbitration agreement's provision for judicial review of legal error was unenforceable. The Ninth Circuit reversed in favor of Mattel, instructing the District Court to consider the original decision of the arbitrator pursuant to the grounds allowable under 9 U.S.C. § 10, or modified or corrected under

- 25 -

9 U.S.C. § 11.  After the District Court again held for Hall Street, reasoning that the arbitration award rested on an implausible interpretation of the lease and thus exceeded the arbitrator's powers, the Ninth Circuit reversed, holding that implausibility is not a valid basis for vacatur.  Thus, the Supreme Court granted certiorari review to consider whether the grounds for vacatur and modification provided by §§ 10 and 11 of the FAA are exclusive or whether the statutory grounds may be supplemented by contract.  Id. at 581.

Title 9 U.S.C. § 10(a) provides in part:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

And Title 9 U.S.C. § 11 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

- 26 -

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

Hall St., 552 U.S. at 582 n.4.

The Supreme Court began its analysis by recognizing that "[t]he Courts of Appeals have split over the exclusiveness of these statutory grounds when parties take the FAA shortcut to confirm, vacate, or modify an award, with some saying the recitations are exclusive, and others regarding them as mere threshold provisions open to expansion by agreement." Id. at 583. Hall Street first argued that "expandable judicial review authority" has been the law since Wilko v. Swan, 346 U.S. 427 (1953). The Supreme Court disagreed. It noted that although the "Wilko Court . . . remarked . . . that '[p]ower to vacate an [arbitration] award is limited' . . . and . . . 'the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation,' " this statement did not recognize "manifest disregard of the law" as an additional ground for vacatur. Hall St., 552 U.S. at 584 (quoting Wilko, 346 U.S. at 436-37). Further, the Supreme Court acknowledged that Wilko expressly rejected the concept of general review for an arbitrator's legal

- 27 -

errors and noted the vagueness of the Wilko Court's reference to "manifest disregard" of the law. Hall St., 552 U.S. at 585. Indeed, the Supreme Court suggested that "manifest disregard" of the law could have been a new ground for review, reference to § 10 collectively, or reference to only §§ 10(a)(3) or 10(a)(4), which are the provisions authorizing vacatur when the arbitrators were guilty of misconduct or exceeded their powers. Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 656 (1985) (Stevens, J., dissenting) ("Arbitration awards are only reviewable for manifest disregard of the law, 9 U.S.C. §§ 10, 207"); Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003)).

The Supreme Court then discussed "whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration." Hall St., 552 U.S. at 586. It ultimately concluded that the

> text compels a reading of the §§ 10 and 11 categories as exclusive. To begin with, even if we assumed §§ 10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally. Sections 10 and 11, after all, address egregious departures from the parties' agreed-upon arbitration: "corruption," "fraud," "evident partiality," "misconduct," "misbehavior," "exceed[ing] . . . powers," "evident material miscalculation," "evident material mistake," "award[s] upon a matter not submitted"; the only ground with any softer focus is "imperfect[ions]," and a court may correct those only if they go to "[a] matter of form not affecting the merits."

- 28 -

Id. It further reasoned that "it makes more sense to see the three provisions . . . as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Id. at 588. It then concluded that any other reading "opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,'. . . and bring arbitration theory to grief in post arbitration process." Id. (citations omitted). Accordingly, the Supreme Court held that the statutory grounds were exclusive and could not be supplemented by contract. Id. at 584.

The Supreme Court's decision in Hall Street, which addressed the parties' ability to expand the statutory bases for vacating an award by contract, but focused on the exclusivity of the categories listed, has led to a federal circuit court split regarding whether Hall Street prohibits all extra-statutory grounds for vacating an award, including judicially created grounds.

In Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 350 (5th Cir. 2009), the Fifth Circuit Court of Appeals concluded that Hall Street restricts the grounds for vacating an award to those set forth in section 10 of the FAA and consequently, manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA. The Fifth Circuit reasoned that "[i]n the light of Hall Street's repeated statements that 'We hold that the statutory

grounds are exclusive,' " it could not be interpreted as applying only to contractual expansions of section 10 of the FAA. The Seventh Circuit has held that "[s]ome decisions of this circuit . . . have implied that 'manifest violation of law' has some different or broader content. See, e.g., Edstrom Indus., Inc. v. Companion Life Ins. Co., 516 F.3d 546, 552 (7th Cir. 2008). But . . . none survives [Hall Street]." Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc., 660 F.3d 281, 285 (7th Cir. 2011) (holding that manifest disregard of the law is not a ground on which a court may reject an abritrator's award under the FAA). The Eighth Circuit has also found that claims that the arbitrator disregarded the law are not cognizable under 9 U.S.C. § 10. Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc., 614 F.3d 485, 489 (8th Cir. 2010) ("Appellants' claims, including the claim that the arbitrator disregarded the law, are not included among those specifically enumerated in § 10 and are therefore not cognizable."). Finally, the Eleventh Circuit agreed with the Fifth Circuit that the categorical language of Hall Street compels the conclusion that judicially created bases for vacating an award are no longer valid. Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1324 (11th Cir. 2010) (citing Hall Street, 552 U.S. at 586, 589, 590 ("the text compels a reading of the [sections] 10 and 11 categories as exclusive"; "the statutory text gives us no business to expand the statutory grounds"; "[sections] 10 and 11 provide exclusive regimes for the review provided by the statute")).

The Second and Ninth Circuits, on the other hand, treat manifest disregard of the law as a judicial interpretation of the district court's power under section 10(a)(4) where the arbitrator "exceeded [his] powers" or "so imperfectly executed them that a mutual, final, and definite award . . . was not made." See Comedy Club, Inc. v. Improv W. Assoc., 553 F.3d 1277, 1290 (9th Cir.) (concluding that "manifest disregard of the law remains a valid ground for vacatur" because it is "shorthand for a statutory ground under the FAA. . . ."), cert. denied, 130 S. Ct. 145 (2009); Stolt-Nielsen v. Animalfeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008) (same), cert. granted, Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 129 S.Ct. 2793 (2009).[11]  The Sixth Circuit has concluded in an unpublished opinion that Hall Street "did not foreclose federal courts' review for an arbitrator's manifest disregard of the law" because it held only that the FAA prohibits contractual expansion of the statutory grounds for vacating an award, but did not address whether those grounds could be supplemented judicially.  Coffee Beanery, Ltd. v. WW, L.L.C., 300 Fed. Appx. 415, 418-19 (6th Cir. 2008), cert. denied, 130 S. Ct. 81 (2009).  The Fourth Circuit Court of Appeals also found that "manifest disregard continues to exist either as 'an independent ground for review or as a

---

11. The Supreme Court did not decide whether manifest disregard survived Hall Street "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." Stolt-Nielsen, 559 U.S. at 672 n.3.

judicial gloss.' "[12] <u>Wachovia Sec., LLC v. Brand</u>, 671 F.3d 472, 483 (4th Cir. 2012).

Like the Fifth, Seventh, Eighth, and Eleventh Circuit Courts of Appeals, we are of the view that the FAA bases for vacating or modifying an arbitral award cannot be supplemented judicially or contractually after <u>Hall Street</u>. As the Supreme Court noted in <u>Hall Street</u>, "it makes more sense to see the three provisions . . . as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."[13]  552 U.S. at 588.  Accordingly, courts cannot review the

---

12.  The Third and Tenth Circuits have declined to address this issue. <u>Abbott v. Law Office of Patrick J. Mulligan</u>, 440 Fed. Appx. 612, 620 (10th Cir. 2011) ("But in the absence of firm guidance from the Supreme Court, we decline to decide whether the manifest disregard standard should be entirely jettisoned."); <u>Paul Green Sch. of Rock Music Franchising, L.L.C. v. Smith</u>, 389 Fed. Appx. 172, 177 (3d Cir. 2010) (unpublished) (citing <u>Bapu v. Choice Hotels Int'l Inc.</u>, 371 Fed. Appx. 306 (3d Cir. 2010) (unpublished); <u>Andorra Servs. Inc. v. Venfleet, Ltd.</u>, 355 Fed. Appx. 622, 627 (3d Cir. 2009) (unpublished)).  Further, although the First Circuit briefly addressed the issue in dicta, it chose not to squarely determine whether its case law on manifest disregard of the law could be reconciled with <u>Hall Street</u>.  <u>See</u> <u>Kashner Davidson Sec. Corp. v. Mscisz</u>, 601 F.3d 19, 22 (1st Cir. 2010) (citing <u>Ramos-Santiago v. United Parcel Serv.</u>, 524 F.3d 120, 124 n.3 (1st Cir. 2008) (acknowledging that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the FAA in light of <u>Hall Street</u>, but declining to reach the question of whether <u>Hall Street</u> precludes a manifest disregard inquiry in the setting presented)).

13.  Further, the Supreme Court suggested that the enumerated grounds for vacatur in 9 U.S.C. § 10 are exclusive in <u>First Options</u>.  There, the Supreme Court held that if parties contractually agree to submit the question of arbitrability itself to arbitration, then "the court should give considerable leeway to the arbitrator,

claim that an arbitrator's construction of a contract renders it illegal. We now turn to JMC's argument that the arbitrators exceeded their powers.

## 2. Whether the Arbitrators Exceeded their Powers

In Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064 (2013), the question presented was whether an arbitrator "exceeded [his] powers" pursuant to 9 U.S.C. § 10(a)(4) by finding that the parties' contract provided for class arbitration. The Supreme Court noted at the outset that "[a] party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.' " Oxford Health, 133 S. Ct. at 2068 (quoting Stolt-Nielsen, 559 U.S. at 671). It further noted that an arbitral decision " 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits" because the parties " 'bargained for the arbitrator's construction of their agreement.' " Id. (quoting Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000) (quoting Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960); Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987); (internal quotation marks omitted))). Thus, a court has the power to overturn an arbitrator's determination only if " 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply

setting aside his or her decision only in certain narrow circumstances," citing 9 U.S.C. § 10. First Options, 514 U.S. at 943 (emphasis added).

reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract.' " Id. (quoting Eastern Associated Coal, 531 U.S. at 62 (quoting Misco, 484 U.S. at 38)). Effectively, the Supreme Court narrowed the question presented to whether the arbitrator arguably interpreted the parties' contract. Id. Accordingly, because the Supreme Court observed that the arbitrator twice considered the parties' contract and decided whether it reflected an agreement to permit class proceedings, it held that the arbitrator did not exceed his powers.

The Supreme Court also determined whether an arbitrator exceeded his powers in Stolt-Nielsen. There, it found that an arbitrator did exceed his powers by ordering a party to submit to class arbitration. The Supreme Court reasoned that the parties had entered into a stipulation stating that they had never reached an agreement on class arbitration, which made clear that the panel's decision could not have been based on the parties' intent. Stolt-Nielsen at 673 n.4, 676 ("Th[e] stipulation left no room for an inquiry regarding the parties' intent."). The Supreme Court concluded that "the panel simply imposed its own conception of sound policy" and thus exceeded its powers. Id. at 675, 677.

Here, JMC argues that the arbitrators exceeded their powers because the panel interpreted the purchase agreement in a manner that would violate state and federal laws, regulations, and rules resulting in both civil and criminal penalties.

Specifically, JMC points to sections 20, 24, and 28 of the purchase agreement, which expressly state that the parties were not to construe the discharge planning procedures, the purchase price of the home health care agency (HHA), and either of the leases as an illegal agreement to make, influence, and steer future patient referrals to VNA. In short, the parties were to interpret the requirements of the contract in a manner consistent with state and federal health care laws. Thus, JMC essentially argues that the arbitrators exceeded their powers because they interpreted the contract in a manner allegedly inconsistent with the contract's terms. It is clear from JMC's argument that it simply disagrees with the panel's construction of the contract rather than alleging that the panel "imposed its own conception of sound policy." Accordingly, the arbitration panel did not exceed its powers pursuant to 9 U.S.C. § 10(a)(4).

Based on the foregoing, JMC's claim that the arbitration panel construed the contract to be an unlawful agreement is not grounds for review pursuant to 9 U.S.C. § 10, and the arbitration panel did not otherwise exceed its powers pursuant to 9 U.S.C. § 10(a)(4). Our review of the provisions of the FAC leads us to the same conclusion.

## C. Florida Arbitration Code

### 1. Whether a Court Can Consider the Claim that a Contract Containing an Arbitration Provision is Void for Illegality

"When construing a statute, this Court attempts to give effect to the Legislature's intent, looking first to the actual language used in the statute and its plain meaning." Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 439 (Fla. 2013) (citing Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005)). " 'Where the statute's language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent.' " Trinidad, 121 So. 3d at 439 (quoting Fla. Dep't of Children & Family Servs. v. P.E., 14 So. 3d 228, 234 (Fla. 2009)).

Section 682.13(1), Florida Statutes (2009), provides:

> (1) Upon application of a party, the court shall vacate an award when:
>
> (a) The award was procured by corruption, fraud or other undue means.
> (b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party.
> (c) The arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers.
> (d) The arbitrators or the umpire in the course of her or his jurisdiction refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of s. 682.06, as to prejudice substantially the rights of a party.

(e) There was no agreement or provision for arbitration subject to this law, unless the matter was determined in proceedings under s. 682.03 and unless the party participated in the arbitration hearing without raising the objection.

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

§ 682.13(1), Fla. Stat. (2009).  The unambiguous language of section 682.13(1) does not include the term "illegality" or require a court to vacate an arbitrator's "illegal construction of the underlying contract."  Further, the list of circumstances set forth in section 682.13(1) is directed at arbitral misconduct or lack of authority, and not mere errors of law, or errors of construction or interpretation of a contract. Accordingly, although Florida courts are wont to refuse to enforce an illegal contract as noted by the Fourth District, the plain language of the statute constrains the courts' authority to vacate awards to the five grounds set forth in section 682.13(1).  See Jupiter Med. Ctr., 72 So. 3d at 186 (noting case law indicates that Florida courts will not enforce an illegal contract).  Indeed, we have previously held that section 682.13(1) sets forth the only grounds upon which an award of an arbitrator may be vacated.

In Schnurmacher, 542 So. 2d at 1328, a commercial lessor filed a motion to vacate an arbitrator's award finding that the commercial lessor rather than the lessee was obligated to pay sales tax on rental payments.  The circuit court confirmed the award and the Third District Court of Appeal reversed.  This Court

held that "in the absence of one of the five factors set forth in [section 682.13], neither a trial court nor a district court of appeal has the authority to overturn the award" despite the arbitrator's erroneous interpretation of the statutes governing sales tax obligations.  Id.  This Court specifically observed that "it is well settled that 'the award of arbitrators in statutory arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment.' "  Id. (quoting Cassara v. Wofford, 55 So. 2d 102, 105 (Fla. 1951); and citing District School Bd. v. Timoney, 524 So. 2d 1129 (Fla. 5th DCA 1988), Prudential-Bache Sec., Inc. v. Shuman, 483 So. 2d 888 (Fla. 3d DCA 1986), McDonald v. Hardee Cnty. School Bd., 448 So. 2d 593 (Fla. 2d DCA), rev. denied, 456 So. 2d 1181 (Fla. 1984), and Newport Motel, Inc. v. Cobin Rest., Inc., 281 So. 2d 234 (Fla. 3d DCA 1973)); see also Felger v. Mock, 65 So. 3d 625, 626 (Fla. 1st DCA 2011) ("Section 682.13(1), Florida Statutes (2009), sets forth the only grounds upon which an arbitration award in a statutory arbitration proceeding may be vacated. . . ."); Commercial Interiors, 19 So. 3d at 1064 ("We have specifically held that in order to vacate an arbitration award a party must establish one of the five section 682.13 grounds.").  Accordingly, section 682.13(1) sets forth the only grounds upon which an arbitration award will be vacated and an arbitration panel's

alleged construction of a contract to be an unlawful agreement is not one of those five grounds.

Jupiter Medical Center, however, argues that there is a public policy exception to the statute. We decline to adopt a public policy exception to the statute. In reaching this conclusion, we are mindful of the hypothetical possibility that an arbitration panel could erroneously determine that an agreement is lawful and not void for illegality. Indeed, it was this concern in part that led us to determine in Cardegna v. Buckeye Check Cashing, Inc., 894 So. 2d 860 (Fla. 2005) rev'd and remanded, 546 U.S. 440 (2006) and opinion withdrawn, 930 So. 2d 610 (Fla. 2006), that a claim that a contract was void for illegality should be decided by the courts and not arbitrators. See Cardegna, 894 So. 2d at 862 (quoting Party Yards, Inc. v. Templeton, 751 So. 2d 121, 123 (Fla. 5th DCA 2000) (indicating a concern with submitting a claim that a contract is void for illegality to arbitration because it "could breathe life into a contract that not only violates state law, but also is criminal in nature")).

Parties to an agreement containing an arbitration provision, however, specifically bargained for an arbitrator's construction and interpretation of the agreement as an alternative to litigation in the courts system, as opposed to an additional step in the process. See B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 907 (11th Cir. 2006) (noting that the "laudatory goals of [arbitration]

- 39 -

will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest"). This characteristic of arbitration—finality—is perhaps its most prized feature. For instance, in Schnurmacher, this Court stated:

> The reasons underlying the need for finality of arbitration awards were expressed in Johnson v. Wells, 72 Fla. 290, 297; 73 So. 188, 190-91 (1916):
>
> > The reason for the high degree of conclusiveness which attaches to an award made by arbitrators is that the parties have by agreement substituted a tribunal of their own choosing for the one provided and established by law, to the end that the expense usually incurred by litigation may be avoided and the cause speedily and finally determined. To permit the dissatisfied party to set aside the award and invoke the judgment of the court upon the merits of the cause would be to render it merely a step in the settlement of the controversy, instead of a final determination of it.
>
> These reasons, articulated by this Court over seventy years ago, remain relevant under today's arbitration legislation. As petitioner notes, the finality and enforceable nature of an arbitration award is a characteristic of arbitration that distinguishes it from other forms of alternative dispute resolution. To allow judicial review of the merits of an arbitration award for any reasons other than those stated in section 682.13(1) would undermine the purpose of settling disputes through arbitration. We find it incumbent to adhere to the long-standing principle of finality of arbitration awards in order to preserve the integrity of the arbitration process as a means of alternative dispute resolution.

Schnurmacher, 542 So. 2d at 1328-29 (emphasis added). Here, the parties to the agreement received the benefit of their bargain—arbitral construction of the

agreement as opposed to litigation in the courts system.[14]  Thus, we decline to adopt a public policy exception under these circumstances because such an exception would evince resistance to arbitration and deprive the parties of perhaps arbitration's ultimate benefit of finality.  See id. at 1329.

Likewise, we find that the circumstances presented here do not merit relief pursuant to section 682.13(1)(c), Florida Statutes (2009), because the arbitrators did not exceed their powers.

### 2.  Whether the Arbitration Panel Exceeded its Powers

As noted above, JMC argues that the arbitrators exceeded their powers because the panel interpreted the purchase agreement in a manner that would violate state and federal laws, regulations, and rules resulting in both civil and criminal penalties.  Because the phrase "exceeded their powers" in section 682.13(1)(c), Florida Statutes (2009), does not encompass misinterpretations of contractual provisions or other errors of law, but is jurisdictional in nature, we disagree.

---

14.  We again note that neither party contested the legality of the contract during the arbitration proceedings; only after an adverse arbitration award did JMC raise the issue of the contract's illegality by asserting that the arbitration panel's construction of the contract rendered it unlawful.  Further, the arbitration panel considered and rejected JMC's arguments.  Where, as here, a contract is not patently illegal and criminal in nature, more expansive judicial review of an arbitral decision would amount to simple disagreement with an arbitrator's application of the law to the facts.

In Schnurmacher, this Court discussed the meaning of "exceeded their powers" as follows:

> Section 682.13(1)(c) declares that an arbitration award may be vacated if it is shown that the arbitrator exceeded his or her power. Respondent now urges us to interpret subsection (c) to include that if an arbitrator departs from the accepted rule of law, then the arbitrator's award can be vacated on the ground that the arbitrator exceeded his or her power. However, our view is that an arbitrator exceeds his or her power under subsection (c) when he or she <u>goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration</u>. <u>See</u> <u>International Medical Centers, Inc. v. Sabates</u>, 498 So. 2d 1292 (Fla. 3d DCA), <u>review denied</u>, 508 So. 2d 14 (Fla. 1987); <u>Broward County Paraprofessional Ass'n v. McComb</u>, 394 So. 2d 471 (Fla. 4th DCA 1981); <u>Dubbin v. Equitable Life Assurance Society of the United States</u>, 234 So. 2d 693 (Fla. 4th DCA), <u>cert. denied</u>, 238 So. 2d 423 (Fla. 1970).

<u>Schnurmacher</u>, 542 So. 2d at 1329 (emphasis added); <u>see also</u> <u>Nucci v. Storm Football Partners</u>, 82 So. 3d 180, 183 (Fla. 2d DCA 2012) (noting that an arbitrator exceeds his power only when he exceeds the authority the parties granted him in their agreement to arbitrate and stating that an arbitrator may very well exceed his authority when he decides an issue that is not pertinent to resolving the issue submitted to arbitration).

The 2009 version of the statute, applicable here, provides that a court shall vacate an award when "[t]he arbitrators or the umpire in the course of her or his

jurisdiction exceeded their powers."[15]  § 682.13(1)(c) (2009).  Thus, a claim that an arbitrator exceeded his or her powers is jurisdictional in nature and is in reference to the scope of authority given to an arbitrator in the arbitration agreement. Moreover, reading this subsection of the statute together with the remainder of the statute, it is clear that the Legislature intended the grounds for vacating an award to be misconduct-oriented or process-oriented.  For instance, the statute provides circumstances under which an award could be vacated such as corruption, fraud, undue means, evident partiality, misconduct prejudicing the rights of any party, refusal to postpone the hearing upon sufficient cause being shown or refusal to hear evidence material to the controversy, or that there was no agreement or provision for arbitration.  Even the cases cited by JMC to support its proposition demonstrate the jurisdictional quality of this subsection.

In <u>Soler v. Secondary Holdings, Inc.</u>, 832 So. 2d 893 (Fla. 3d DCA 2002), the Third District considered the appellant's claim that an arbitrator exceeded the scope of his jurisdiction, which was limited to a determination of whether a joint venture existed between the parties.  <u>Id.</u> at 894.  In holding that the arbitrator exceeded his authority because both the arbitration agreement and the trial court's

_____

15.  This section was subsequently amended in 2013.  It was changed to section 682.13(1)(d) and provides that a court shall vacate an award when "an arbitrator exceeded the arbitrator's powers."  It is not clear why the "in the course of her or his jurisdiction" language was stricken from the statute.  Nevertheless, the absence of such language from the 2009 statute would not alter the result.

order limited the arbitration proceeding to a determination of whether a partnership was formed, the Third District noted that "[a]n Arbitrator exceeds his or her power when he or she goes beyond the authority granted by the parties and decides an issue not pertinent to the resolution of the matter submitted to arbitration." Id. at 895.

In Edstrom Industries, the Seventh Circuit Court of Appeals held that "the arbitrator cannot disregard the lawful directions the parties have given them. If they tell him to apply Wisconsin law, he cannot apply New York law." Edstrom Indus., 516 F.3d at 552 (holding that manifest disregard of the law is not a ground on which a court may reject an arbitrator's award under the FAA). Thus, Edstrom stands for the proposition that an arbitrator exceeds his or her powers if the arbitration clause directs the arbitrator to apply a particular state's laws and the arbitrator chooses to apply a different state's laws, which would be acting outside the scope of authority provided by the parties to the contract.

Here, the parties' arbitration clause authorized the arbitration panel to preside over "[a]ny dispute, controversy or claim arising out of or related to this Agreement or the breach hereof"—the clause did not contain any other limiting language of authority. The arbitration panel presided over a claim for breach of the agreement, awarding damages and attorney's fees and costs. Thus, by awarding damages based on a breach of contract, the arbitration panel "did what the parties

had asked" and did not "decide[] an issue not pertinent to the resolution of the issue submitted to arbitration."[16]  See Schnurmacher, 542 So. 2d at 1329; Oxford Health, 133 S. Ct. at 2069.  Accordingly, the arbitration panel did not exceed its powers.

### III.  CONCLUSION

Based on the foregoing, the claim that an arbitration panel construed a contract containing an arbitration provision to be an unlawful agreement is an insufficient basis to vacate an arbitrator's decision pursuant to the FAA or the FAC.  Further, the arbitration panel did not exceed its powers.  Accordingly, we quash the Fourth District's decision in Jupiter Medical Center, Inc. v. Visiting Nurse Ass'n of Florida, Inc., 72 So. 3d 184 (Fla. 4th DCA 2011), because the district court below erred in holding that a court must determine whether a contract is legal prior to enforcing an arbitral award based on the contract.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

---

16.  If JMC's argument did apply, such a construction of section 682.13(1)(c), Florida Statutes (2009), would lead to parties such as VNA contesting an arbitrator's determination that a contract is illegal and unenforceable on the very same grounds.  For instance, if the arbitrator were to have held that the contract was unenforceable despite language in the contract stating the parties were to construe the agreement in accordance with the law, VNA would argue that the arbitrator exceeded his or her powers because the contract constrained the arbitrator from reaching such a determination.

- 45 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fourth District – Case No. 4D10-1803

(Palm Beach)

David B. Earle, Thomas K. Gallagher, and John P. Carrigan of Ross Earle & Bonan, P.A., Stuart, Florida,

for Petitioner

Michael G. Austin and Matthew D. Grosack of DLA Piper LLP (US), Miami, Florida,

for Respondent