# Third District Court of Appeal

## State of Florida

Opinion filed September 30, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1881
Lower Tribunal No. 20-21431
_____

**Metro Dade Firefighters, International Association of Fire Fighters, Local 1403,**
Appellant,

vs.

**Miami-Dade County,**
Appellee.

An Appeal from the Circuit Court for Miami Dade County, Maria De Jesus Santovenia, Judge.

Mierzwa & Floyd, P.A., and Matthew J. Mierzwa, Jr. (Lake Worth), for appellant.

Geraldine Bonzon-Keenan, Miami Dade County Attorney, and Leona N. McFarlane, Assistant County Attorney, for appellee.

Before LOGUE, LINDSEY, and MILLER, JJ.

LOGUE, J.

Metro Dade Fire Fighters, International Association of Fire Fighters, Local 1403 (the "Union") appeals the circuit court's order vacating an arbitration award against Miami-Dade County (the "County"). The circuit court determined that the arbitrator exceeded his powers in awarding the restoration of sick leave to a firefighter for an eleven-year period preceding an award of long-term disability benefits. Because we find that the arbitrator did not exceed his powers, we are constrained to reverse the circuit court's order vacating the arbitration award.

**Factual and Procedural Background**

The Union and the County are parties to a collective bargaining agreement that provides for arbitration to address grievances within the meaning of the agreement. Article 19.5 of the collective bargaining agreement incorporates the Miami-Dade County Service-Connected Disability Program (the "Disability Program"), as enumerated in sections 2-56.21 through 2-56.27.1 of the Miami-Dade County Code. Section 2-56.26 of the Disability Program provides that "[a]n employee who suffers a service-connected disability shall not use or be charged sick leave if he is granted disability leave or disability payments."

The County employed Ramiro Calvo as a firefighter from October 2005 until his retirement on December 3, 2017. During his career, Mr. Calvo

2

sustained several on-the-job injuries beginning in October 2006 that impacted his ability to work. Mr. Calvo was granted short term disability benefits for these various injuries. On October 17, 2017, Mr. Calvo filed a grievance asserting that he was entitled to have his entire annual, sick, and holiday time restored pursuant to Article 19.5 of the collective bargaining agreement and Section 2-56.26 of the Disability Program because he was forced to use his leave time due to his compensable on-the-job injuries. Mr. Calvo also applied for long term disability benefits, which were ultimately granted with an effective date of November 15, 2017.

On April 30, 2018, Mr. Calvo's grievance was sustained with a notation that ". . . FF Calvo (ret.) has been reimbursed what Risk Management has determined is the correct amount which he is due." This referred to a February 14, 2018 check issued by the County to Mr. Calvo representing a retroactive payment of Mr. Calvo's sick leave for periods during which he was granted short term disability benefits. Believing this did not satisfactorily resolve Mr. Calvo's grievance, the Union demanded the grievance proceed to arbitration.

On November 14, 2019, an arbitration hearing was held. The arbitrator issued his Decision and Award on February 12, 2020. The arbitrator summarized the dispute presented as follows:

3

[The Union on behalf of Mr. Calvo alleges that the County] violated the Art. 19.5 of the collective bargaining agreement ("CBA") and County disability policies, including Sec. 2-56.26 "Sick Leave" of the Miami-Dade Code by not fully restoring [Mr. Calvo's] use of leave time when the use of that time was due to on-the-job injuries. The County maintains that it did restore [Mr. Calvo's] leave pay in accordance with its Policy and the CBA and thus no remedy is due [Mr. Calvo]. At issue is whether the County violated Article 19.5 of the CBA and if so, what is the proper remedy?

The arbitrator concluded the County violated Article 19.5 of the CBA because it failed to enforce Section 2-56.26 relating to sick leave by failing to properly administer it when long term disability benefits under Section 2-56.27.1 had been granted by its Panel effective November 15, 2017. The arbitrator directed the County to calculate the leave hours it deduced from Mr. Calvo unrelated to his short-term disability restorations and pay him for same. The arbitrator also retained jurisdiction for a period of 60 days to address "any unresolved issue or issues concerning the remedy."

The parties continued to disagree regarding the requirements of the arbitrator's remedy and returned before the arbitrator. The County identified the issue for submission to the arbitrator as: "What, if any, remedy is due Calvo based on his approval for long term disability benefits, effective November 17, 2017." The County contended no further sick leave was required to be restored because Mr. Calvo did not use, nor was he charged

4

for, any sick leave during the period from November 17, 2017, the effective date of his long-term disability benefits, through his last day of employment, December 3, 2017. The Union disagreed, however, and argued the appropriate time frame for consideration was between "October 2006 and December 2017," contending that the decision to grant long term disability was unrelated to the requirement that the County not charge sick leave when somebody received those disability payments.

On July 7, 2020, the arbitrator issued a Post-Decision/Award Remedy Decision approving the Union's position and ordering the County to "comply with the CBA and its Ordinance and restore the remaining portion of [Mr. Calvo's] sick leave that occurred in his 11 year period of disability that led to his becoming eligible for long term disability benefits." The County filed a Motion to Vacate Arbitration Award with the circuit court, arguing the arbitrator exceeded his authority when he issued the July 7th Post-Decision/Award Remedy Decision. The Union opposed the motion, arguing the arbitrator resolved the exact issue submitted by the County and that the County waived any claim that the arbitrator exceeded his powers by specifically asking the arbitrator to determine the remedy, litigating the issue, and otherwise failing to argue the matter was beyond the grievance and arbitration procedures of the CBA.

5

On August 20, 2021, the circuit court issued its Order granting the County's Motion to Vacate Arbitration Award. The circuit court ruled the arbitrator had no authority to issue the Post-Decision/Award Remedy Decision, concluding that the arbitrator did not confine himself exclusively to the question presented by Mr. Calvo's grievance and instead exceeded his authority by altering and supplementing the County's Disability Program and the CBA. The circuit court noted that the County's Disability Program expressly provided that "[t]he Disability Panel shall administer all matters arising under this program," while "[p]ayments authorized by this program and related procedural matters shall be administered by the Risk Management Division," and ". . . an award or the denial or termination of an award by the Disability Panel shall be final and binding upon both the employee and Miami-Dade County."

The circuit court concluded that the arbitrator, in direct opposition to these parameters, impermissibly ignored the Disability Panel's determination and concluded that Mr. Calvo was entitled to sick leave restoration for an eleven-year period of disability, thereby essentially ignoring section 2-56.26 and extending coverage to Mr. Calvo for eleven years before the County Disability Panel actually granted Mr. Calvo long-term disability payments. The circuit court thus ruled that "[n]either the CBA nor the County's Service-

6

Connected Disability Program ordinance gave the arbitrator the authority to dispute or substitute the Disability Panel's award with his own determination that Calvo's long term disability began 11 years earlier."

**Analysis**

In reviewing an order vacating an arbitration award, our review "is very limited, with a high degree of conclusiveness attaching to an arbitration award." Marr v. Webb, 930 So. 2d 734, 737 (Fla. 3d DCA 2006). "This limited review is necessary to avoid a judicialization of the arbitration process, and to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative." Id. (internal quotation marks omitted). We review findings of fact for competent substantial evidence and questions of law de novo. Id.

Section 682.13(1), Florida Statutes, sets forth the only grounds on which an award of an arbitrator must be vacated. In the absence of one of the five factors set forth in the statute, neither the circuit court nor this Court has the authority to overturn the arbitration award. Id. Indeed, "it is well settled that 'the award of arbitrators in [ ] arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates

7

as a final and conclusive judgment.'" Schnurmacher Holding, Inc. v. Noriega, 542 So. 2d 1327, 1328 (Fla. 1989) (quoting Cassara v. Wofford, 55 So.2d 102, 105 (Fla.1951)).

As relevant here, an arbitrator's award must be vacated when the arbitrator exceeds his or her powers. See § 682.13(1)(d), Fla. Stat. "[A]n arbitrator exceeds his or her power . . . when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." Schnurmacher Holding, Inc., 542 So. 2d at 1329. Whether an arbitrator exceeded his authority within the meaning of section 682.13 is an issue of law subject to de novo review. See Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc., 154 So.3d 1115, 1124 (Fla. 2014).

Here, the CBA is the operative document and it provides that "[i]f a grievance, as defined in Article 4, has not been satisfactorily resolved through the grievance procedure, the Union may request arbitration . . . ." (R. 23, Art. 5.1). A grievance, in turn, is defined as "any dispute involving the interpretation or application of the terms of [the CBA]." The CBA indicates that the arbitrator's award "shall be final and binding on both parties."

Mr. Calvo's grievance identified the basis of his dispute as Article 19.5 of the CBA, which states: "The County shall provide to the members of the

8

bargaining unit all benefits set forth in the Service Connected Disability Program and administer those benefits consistent with the provisions of the program as enumerated in Section 2-56.21 through 2-56.27.1 of the Miami-Dade County Code." Mr. Calvo also identified Section 2-56.26 of the Miami-Dade County Code, which was incorporated into the CBA by Article 19.5, as part of his grievance. Section 2-56.26 provides: "Sick leave. An employee who suffers a service-connected disability shall not use or be charged sick leave if he is granted disability leave or disability payments."

Mr. Calvo's grievance detailed his on-the-job injuries beginning in October 2006 that resulted in ongoing treatments that required him to use the entirety of his annual, sick and holiday time, and requested to have his time restored pursuant to Article 19.5 and Section 2-56-26. In the initial arbitration proceedings, the Union took the position that the County violated Article 19.5 and Section 2-56-26 by not fully restoring Mr. Calvo's use of leave time when the use of that time was due to on-the-job injuries. The County, in turn, maintained that it did restore Mr. Calvo's leave pay in accordance with Article 19.5 and Section 2-56.26 and thus no remedy was due.

Based on the foregoing, the arbitrator identified the issue presented to him for determination as: "[W]hether the County violated Article 19.5 of the

9

CBA and if so, what is the proper remedy?" The arbitrator decided these issues, specifically concluding that the County violated Article 19.5 and failed to enforce and properly administer Section 2-56.26 after Mr. Calvo was granted long term disability benefits and that the proper remedy was for the County to calculate the applicable restoration hours and make the payment of sick leave it deducted from Mr. Calvo unrelated to his short-term disability restorations.

The parties then returned before the arbitrator for clarity regarding the remedy imposed by the arbitrator for the County's violation of Article 19.5. The County itself, moreover, specifically identified the issue for resolution by the arbitrator as: "What, if any, remedy is due to Calvo based on his approval for long term disability benefits, effective November 17, 2017." And, again, this was the issue the arbitrator decided, determining that the remedy due to Mr. Calvo was restoration of the remaining portion of his sick leave that occurred in his eleven-year period of disability that led to his becoming eligible for long term disability benefits.

The arbitrator, therefore, did not exceed his power. The CBA granted the arbitrator the authority to resolve grievances. Here, the grievance submitted by the Union concerned a dispute involving the interpretation and application of Section 2-56.26, which was incorporated into the CBA by its

own terms, namely Article 19.5. The arbitrator decided only the issue submitted to arbitration. He interpreted and applied Section 2-56.26, finding that the provision required the County to restore all of Mr. Calvo's leave time for the period of time from his first on-the-job injury through his retirement after a finding of long-term disability because all of this time was taken as a result of Mr. Calvo's various compensable injuries and the lingering effects of these injuries. Therefore, he "did what the parties had asked and did not decide an issue not pertinent to the resolution of the issue submitted to arbitration." Visiting Nurse Ass'n of Florida, Inc., 154 So. 3d at 1137 (internal quotation marks omitted).

Whether the arbitrator's decision was legally correct is irrelevant because "[a]n award of arbitration may not be reversed on the ground that the arbitrator made an error of law." Schnurmacher Holding, Inc., 542 So. 2d at 1329. Thus, while the circuit court may have disagreed with the arbitrator's interpretation and application of Section 2-56.26, it was not free to vacate the arbitration award because the arbitrator did not exceed his power. We are similarly constrained and must reverse the circuit court's order.

Reversed and remanded.